**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

|                           |   |                        |
|---------------------------|---|------------------------|
| **JOSSEAN CRISPIN,**      | : |                        |
| **Plaintiff,**            | : |                        |
|                           | : |                        |
| **v.**                    | : | **No. 3:19-cv-413 (VLB)** |
|                           | : |                        |
| **ANDREA REISCHERL, et al.,** | : |                    |
| **Defendants.**           | : |                        |
|                           | : |                        |

**INITIAL REVIEW ORDER**

Plaintiff, Jossean Crispin, currently confined at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983. Before correcting deficiencies in his motion to proceed *in forma pauperis*, plaintiff filed a motion to amend and an Amended Complaint. He also filed a motion for extension of time and two motions for appointment of counsel. As plaintiff can file an amended complaint once as of right under these circumstances, his motion to amend, Doc. #8, is denied as moot. In addition, plaintiff paid the filing fee to commence this action. Thus, his motion for extension of time to respond to the notice of insufficiency, Doc. #10, also is denied as moot.

Plaintiff claims he was discriminated against for being charged with a sexual offense. Plaintiff names seventeen defendants in the caption of the Amended Complaint: APRN Andrea Reischerl, LPC William J. Longo, Warden Nick Rodriguez, Dr. Leonard J. Santarsiero, Dave Maiga, Correctional Officer Craig Purdy, Elizabeth Tugie, Counselor Supervisor Carlene Davis, Captain Keith

Lizon, Captain Gregorio Robles, Captain Brian Jackson, Acting Deputy Commissioner Angel Quiros, former Commissioner Scott Semple, former Deputy Commissioner Monica Rinaldi, former Deputy Commissioner Cheryl Cepelak, Counselor Shannon Dow, and Nurse Victoria A. Kilham.  Plaintiff names all defendants in individual and official capacities.

Under 28 U.S.C. § 1915A (2000), the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  *Id.*  This requirement applies both when the plaintiff pays the filing fee and when he proceeds *in forma pauperis.  See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank*

*of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## I.   Allegations

### A.   Background

Plaintiff was readmitted to the Department of Correction at Hartford Correctional Center on January 10, 2018.  Pursuant to a court order for mental health treatment, plaintiff was housed awaiting transfer to Garner Correctional Institution ("Garner").  He was transferred two days later.

On January 16, 2018, plaintiff was placed in C-Block.  Counselor Hakin, who is not a defendant, asked plaintiff the nature of the charges against him. Plaintiff refused to discuss his case on advice of his attorney.  When plaintiff asked whether his wife was on his visiting list, Counselor Hakin said yes, but also said she was removing his wife from the list.  Counselor Hakin would not provide a reason.

Later in the day, Counselor Hakin asked plaintiff to sign a form indicating that he wanted his wife on his visiting list.  Plaintiff read the form upside down and saw that the form was to permanently remove persons from his visiting list. He refused to sign the form.  Plaintiff believes that the Department of Correction was attempting to isolate him to assist the police in building their case as plaintiff's wife was his key witness.  Plaintiff asked that he be separated from Counselor Hakin and filed a grievance about this incident.

The next day, Counselor Hakin told plaintiff that his wife and son could not visit.  Plaintiff broke down and began crying uncontrollably.  He asked to speak to mental health staff but Counselor Hakin refused and instructed Correctional Officer Giffen to issue plaintiff a disciplinary report.  She claimed that plaintiff was making threats.  Plaintiff stated that he was speaking to "the voices."

Plaintiff was placed on suicide watch.  When he filed grievances about everything, Counselor Hakin and Dr. Carhart cleared him from suicide watch.  Plaintiff was transferred from Garner.  Plaintiff requested that the hand-held video recording be preserved to show his mental instability.  Counselor Hakin and Captain Capellaro, also not a defendant, refused the request and destroyed the recording.

Plaintiff returned to Hartford Correctional Center.  He was placed in a single cell because of his mental illness.  Plaintiff decompensated and sought mental health treatment.  While being escorted to the nurse, Correctional Officer Fortin, who is not a defendant, made sexual comments and called plaintiff a child molester.  After speaking to the nurse, plaintiff asked to speak to a lieutenant because he disagreed with his placement on suicide watch.  Plaintiff claimed he was not suicidal.  Plaintiff considered his behavior as verbally venting but not hostile or aggressive.

Officer Fortin picked plaintiff up and slammed him on his head causing plaintiff to experience a seizure.  When he regained consciousness, Officer Fortin was slamming his head against the floor.  The nurse called a false code, causing plaintiff to be sprayed in his face with a chemical agent.  Plaintiff suffers from

4

asthma and should not be exposed to chemical agents.

Plaintiff went to court with a swollen face and black eyes.  His attorney contacted the state police on plaintiff's behalf.  Plaintiff was denied permission to speak to the state police because he was on suicide watch.  For thirty days, plaintiff was transferred among correctional facilities, always on suicide watch. Plaintiff contends that the transfers were intended to exacerbate his mental illness and prevent him from filing grievances.  Ultimately, he was transferred to Connecticut Valley Hospital.

B.    Allegations Underlying Claims

The alleged harassment resumed upon plaintiff's return to the Department of Correction.  On May 9, 2018, defendant Purdy told plaintiff that he would mentally break him for being charged with a sexual offense.  When plaintiff left his cell for recreation, defendant Purdy began shoving plaintiff and telling plaintiff to "hit me child molester."  Doc. #9 at 15, ¶ 1.  Defendant Purdy shoved plaintiff into a door causing a cut to his brow for which defendant Purdy denied medical treatment that day and the next day.

Plaintiff submitted requests regarding this harassment to defendants Rodriguez and Davis as well as Dr. Frayne and Derrick Molden.  The requests were ignored.  The abuse increased.  Plaintiff began saving his medication to commit suicide.  He was discovered and punished for worsening his mental health condition.  Plaintiff continued filing requests and grievances over the following months.

In July 2018, defendant Purdy came to search plaintiff's cell.  He made

sexual comments and told plaintiff that he intended to trash the cell.  Defendant Captain Lizon, defendant Purdy's supervisor told plaintiff that defendant Purdy had been spoken to regarding incident in May.  However, defendant Purdy continued to retaliate against plaintiff for four or five months through a pattern of harassment and threats of false disciplinary charges.

On September 5, 2018, plaintiff filed an Inmate Remedy regarding the retaliation and sexual harassment.  As the harassment increased, the warden told plaintiff was being placed "on Administrative."  *Id.*, ¶ 7.  Plaintiff became mentally unstable and again began saving medication to overdose.  While in segregation, defendant Purdy called him a snitch, threatened beatings and disciplinary action, and told plaintiff that he intended to make plaintiff's prison time hell.

Between September 14 and 27, 2018, defendant Purdy issued plaintiff two allegedly false disciplinary charges.  Plaintiff's request for preservation of surveillance footage was refused.  On September 27, 2018, plaintiff filed a grievance for retaliation.

On September 28, 2018, Lieutenant Lindsey told plaintiff that the pattern of abuse and two disciplinary charges by defendant Purdy presented a separation issue.  The following day, plaintiff asked Lieutenant Vallere to check if a separation had been reduced to writing.  It had not.  On September 29, 2018, plaintiff complained about defendant Purdy to Lieutenant Roberts.

On October 1, 2018, plaintiff spoke to defendant Captain Robles about the disciplinary charges.  Defendant Robles smiled and stated that he did not believe that plaintiff had not made any threats.  Defendant Robles said he was aware of

6

the history between plaintiff and defendant Purdy and acknowledges that the charges probably were fabricated but said that an inmate's word was not credible.  Shortly thereafter defendant Purdy was transferred.

Plaintiff submitted a FOIA request to preserve surveillance footage from September 14, 2018 through September 27, 2018, and from September 27, 2018 through October 1, 2018.  Defendant Captain Jackson denied the request.

Plaintiff received notice that defendant Rodriguez was requesting Administrative Segregation placement based on the two disciplinary charges from defendant Purdy and an earlier ticket for fighting that was dismissed as self-defense.  Plaintiff believes that a second reason for the placement was that plaintiff was being charged with sexual assault.

Plaintiff requested that his advocate, Counselor Skrbiski, submit his evidence prior to the hearing.  Counselor Skrbiski refused.  Defendant Tugie, who presided at the November 7, 2018 hearing, refused to grant plaintiff a continuance to obtain his evidence, stating that continuances were not permitted for segregation hearings.  Defendant Tugie told plaintiff that he could have Counselor Skrbiski fax his information to her later.  Plaintiff has submitted an exhibit noting that defendant Dow also informed him that he could submit his evidence later.  Doc. #11 at 56.  Counselor Skrbiski refused to fax the evidence to defendant Tugie.

The decision to place plaintiff on Administrative Segregation was made on November 8, 2018.  The notification of decision form contained no reason for plaintiff's placement.  Plaintiff appealed his placement.  Plaintiff alleges that

defendant Dow completed paperwork to place plaintiff on the sex offender registry, but he never signed the form.  The submitted exhibit is a notification form stating that plaintiff is not eligible for Risk Reduction Earned Credit because he was reclassified to Administrative Segregation.  The box for completed sex offender registration is not checked.  Doc. #11 at 57.

Prior to his placement on Administrative Segregation, plaintiff was decompensating to the extent that Dr. Santarsiero requested that he be returned to Garner for stabilization.  The Department of Correction did not approve the transfer request.  Since then, plaintiff has experienced several mental break-downs as a result of solitary confinement.  He is schizophrenic and engages in self-harm and suicidal ideation.  Plaintiff has undergone forced hospitalization and multiple increases in medication.  Plaintiff's mental health condition prevented him from completing the restrictive housing program.

Plaintiff has written multiple complaints to officials ranging from the commissioner down to counselors.  Administrative Remedies Coordinator Schold, who is not a defendant, has back-dated documents and refused to file grievances to prevent plaintiff from filing lawsuits.

## II.  Discussion

Department of Correction records show that plaintiff was sentenced on January 30, 2019.  *See* www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=339978 (last visited May 8, 2019).  As all of the allegations predate sentencing, plaintiff was a pretrial detainee and his claims for that period are considered under the Fourteenth

Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (rights of pretrial detainees are considered under the Fourteenth Amendment while rights of sentenced prisoners are considered under the Eighth Amendment).

Plaintiff alleges that his confinement in Administrative Segregation became an Eighth Amendment violation after he was sentenced on January 20, 2019. Doc. #1 at 69. While this is true, plaintiff alleges no facts regarding his confinement after he was sentenced. Thus, the Court considers his claims only under the Fourteenth Amendment. Plaintiff also refers to the Thirteenth Amendment and the Universal Declaration of Human Rights. Liberally construing the Amended Complaint, the Court considers below the plausibility of claims for harassment, use of excessive force, denial of due process, false accusation, deliberate indifference to health and safety, and retaliation.

A.    Personal Involvement

Personal involvement in the alleged constitutional violation is a prerequisite for an award of damages under section 1983. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Plaintiff makes no reference to defendants Reischerl, Longo, Maiga, Rinaldi, or Cepelak in his Amended Complaint and their names do not appear in any of the exhibits attached to the Amended Complaint or the additional Evidence and Exhibits he filed. Thus, plaintiff has not stated cognizable claims against them.

The Court notes that some of these defendants are supervisory officials. To establish the personal involvement of a supervisory official, plaintiff must show that that defendant was aware of, and failed to correct or stop, a

9

constitutional violation.  *See Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  Plaintiff does not, however, allege that he made any of these defendants aware of his complaints. Thus, the claims for damages against defendants Reischerl, Longo, Maiga, Rinaldi, and Cepelak are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

In addition, plaintiff seeks injunctive relief in the form of release from Administrative Segregation.  As there are other defendants who can afford him this relief, the official capacity claims against defendants Reischerl, Longo, Maiga, Rinaldi, and Cepelak are dismissed as well.

Plaintiff alleges facts relating only to defendants Semple, Rodriguez, Robles, Purdy, Tugie, Davis, Lizon, Jackson, and Dow in his statement of facts. In his prayer for relief, plaintiff identifies Dr. Santarsiero as the doctor who recommended his transfer to Garner and Angel Quiros as the person who removed plaintiff from Administrative Segregation after he had been on that status for over four years.  Plaintiff has attached 48 pages of exhibits to his Amended Complaint and filed an additional 108 pages of exhibits.  One exhibit shows that, on November 27, 2018, defendant Kilham filed a notice informing plaintiff that the time to respond to a grievance had been extended.  Doc. #1 at 58.

The only allegation against Dr. Santarsiero is that he recommended that plaintiff be transferred to Garner for mental health reasons but that the correctional officials refused to do so.  Plaintiff alleges no facts suggesting that Dr. Santarsiero had authority to override correctional officials.  Thus, the Court cannot discern how Dr. Santarsiero violated plaintiff's constitutional rights.  Any

claims against Dr. Santarsiero are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The only allegation against defendant Quiros is that he removed plaintiff from Administrative Segregation after a confinement there for over four years. Plaintiff alleges that he was readmitted to the Department of Correction on January 10, 2018, just over a year before he commenced this action.   Thus, the allegation against defendant Quiros cannot not relate to this period of incarceration.

Federal Rule of Civil Procedure 20 permits joinder of multiple defendant if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action."   As the period of confinement in Administrative Segregation relating to defendant Quiros occurred at a different time, and probably while plaintiff was a sentenced prisoner, the claim against defendant Quiros does not arise from the same series of occurrences and may involve a different legal standard than the claims against the other defendants. The claim against defendant Quiros is dismissed without prejudice as improperly joined in this action.

The only reference to defendant Kilham is her name on an exhibit notifying plaintiff of an extension of the time to respond to his grievance.  Plaintiff has no constitutional right to have his grievances processed in a timely manner.  *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (inmates have no constitutionally "protected due process entitlements to specific state-mandated

[grievance] procedures") (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (internal quotation marks omitted)).   As plaintiff has not alleged facts suggesting that defendant Kilham violated any of his constitutionally protected rights, the claim against her are dismissed pursuant to 28 U.S.C § 1915A(b)(1).

In addition, plaintiff alleges that defendant Dow improperly registered plaintiff as a sex offender.  The exhibit plaintiff filed, however negates this claim. The form notified plaintiff that he was not eligible for Risk Reduction Earned Credit.  Doc. # 11 at 57.   The checked box indicates that his ineligibility was based on his reclassification to Administrative Segregation.  Although the notification form has a space to show that an inmate has completed the sex offender registration process, that box was not checked.  Thus, contrary to plaintiff's belief, the form does not show that he was registered as a sex offender. As the Court can discern no other factual basis for this claim, the claim against defendant Dow regarding sex offender registration is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

B.     Verbal Harassment

Plaintiff alleges that defendant Purdy threatened and harassed him because he was an accused sexual offender.  Verbal threats and harassment have been held not to state a cognizable claim under section 1983.  *See Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010) ("Verbal harassment, standing alone, does not amount to a constitutional deprivation."); *Cuocco v. Moritsugu*, 222 F.3d 99, 109 (2d Cir. 2000) (noting that "rudeness and name-calling does not rise to the level of a constitutional violation); *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir.

12

1986) (name-calling without appreciable injury not constitutional injury); *Murray v. Pataki*, No. 03-CV-1263(LEK/RFT), 2007 WL 956941, at *8 (N.D.N.Y. Mar. 29, 2007) ("Plaintiff's claim for verbal harassment in the form of racial statements and threats is not actionable under 42 U.S.C. § 1983.").

Plaintiff alleges that defendant Purdy harassed him and told plaintiff that he would make his life in prison miserable because he was an accused sex offender. While reprehensible, the conduct does not constitute a constitutional violation. The harassment claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

C.    Use of Excessive Force

Plaintiff also alleges that, on once occasion, defendant Purdy pushed him against the door causing a cut to his brow.  In *Kinglsey v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466 (2015), the Supreme Court considered an excessive force claim brought by a pretrial detainee.  The Court noted that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."  *Id.* at 2473 (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (internal quotation marks omitted).  To establish an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  *Id.*  In evaluating the reasonableness of the force used, the court should consider "the relationship between the need for the use of force, and the amount of force used; the extend of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  *Id.* (citing *Graham*, 490

13

U.S. at 396).

Plaintiff alleges that defendant Purdy used force as harassment.  There was no security problem or issue precipitating the use of force.  Rather the force was knowingly used solely to harass plaintiff.  The Court considers plaintiff's allegations sufficient to state a plausible claim for excessive use of force.

Plaintiff alleges that he complained about the use of force to defendants Lizon and Rodriguez, but they did not intercede.  As the excessive force claim alleging repeated acts of force is proceeding, supervisory liability claims against defendants Lizon and Rodriguez will proceed for the alleged failure to intervene.

D.    Due Process

Plaintiff contends that he was denied due process at the Administrative Segregation hearing.  "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (internal quotation marks omitted).  If restrictions are imposed on a pretrial detainee solely as punishment and not for a legitimate government purpose, the restrictions violate substantive due process. *Id.*  Procedural due process requires that at a hearing, the pretrial detainee be given "written notice, adequate time to prepare a defense, a written statement of the reasons for action taken, and a limited ability to present witnesses and evidence" before the inmate is subjected to punitive sanctions.  *Id.* n.3.

Plaintiff alleges that defendant Tugie failed to provide a statement of reasons for her decision to reclassify him to Administrative Segregation and

14

refused to permit him to present evidence to show the falsity of the disciplinary reports upon which the reclassification recommendation was based.  Plaintiff alleges and submits evidence that defendants Tugie and Dow told him that he could submit his evidence later but did not arrange for him to do so before the decision was issued.  *See* Doc. #11 at 56.  Plaintiff contends that he was being punished for the charges against him; his reclassification was the result of the false disciplinary reports issued by defendant Purdy because of the charges against him, and not anything he did while in custody.  At this stage of litigation, the Court concludes that the allegations are sufficient to state plausible substantive and procedural due process claims against defendant Tugie and a procedural due process claim against defendant Dow.

E.      False Accusation

Plaintiff alleges that defendant Purdy issued two false disciplinary reports against him.  A false accusation, without more, is not cognizable under section 1983 as a denial of due process.  *Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2005); *Freeman v. Rideout*, 808 F.2d 949, 951-52 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongfully accused of conduct which may result in the deprivation of a protected liberty interest.").  A false disciplinary report "violates due process only where either procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him … or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights…."  *Mitchell*, 158 F. App'x at 349 (citation

15

omitted).

Plaintiff alleges that the false charges were used to support his reclassification to Administrative Segregation and he was not allowed to present evidence to show that the charges were false.  The Court considers the allegations sufficient to support a false accusation due process claim against defendant Purdy.

F.      Deliberate Indifference to Safety

In *Darnell*, the Second Circuit held that the reasoning from *Kingsley* should be applied to other inmate claims involving deliberate indifference, including claims for deliberate indifference to safety.  849 F.3d at 33 n.9.  Thus, to demonstrate that the defendants were deliberately indifferent to his health and safety, a "pretrial detainee must prove that the defendant acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that condition imposed an excessive risk to health or safety."  *Id.* at 35.

Plaintiff alleges that he was held in solitary confinement in Administrative Segregation even though solitary confinement exacerbated his mental health illness causing mental breakdowns and suicidal ideation.  Plaintiff alleges and has submitted many inmate requests and grievances bringing this issue to the attention of the defendants in various ways, but nothing was done.  Plaintiff also provides evidence that he alerted defendants Rodriguez and Lizon of the force used against him by defendant Purdy.  Doc. #11 at 93-95.  Although the

allegations are not entirely clear, the Court considers the allegations to be sufficient at this stage of litigation to plausibly allege that the defendants recklessly failed to act with reasonable care to mitigate the risk to plaintiff's health and safety.  The deliberate indifference claim will proceed against defendants Rodriguez, Tugie, Davis, Robles, Jackson, Lizon, and Semple.

G.     Retaliation

Plaintiff alleges that many actions of the defendants were taken because he filed numerous requests and grievances.  To state a retaliation claim, plaintiff must allege facts establishing three things.  First, he engaged in protected speech or conduct; second, the defendants took adverse action against him; and third, a causal connection between his protected speech and the adverse action. *Bilal v. White*, 494 F. App'x 143, 146 (2d Cir. 2012).  Because retaliation claims are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts.  Conclusory allegations of retaliatory conduct are not sufficient.  *See Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) ("First Amendment retaliation claims brought by prisoners must 'be supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'") (citation omitted).

Plaintiff alleges that he filed numerous requests and grievances.  Filing these documents is a protected activity.  *See Gill v. Pidlypchak*, 389 F.3d 279, 280 (2d Cir. 2004) (filing a grievance is constitutionally protected activity and will support a retaliation claim).  He also alleges that the defendant Purdy increased his harassment and called plaintiff a snitch when plaintiff filed complaints and

grievances against him and defendant Rodriguez decided to recommend Administrative Segregation placement in response to plaintiff's many complaints and grievances. These allegations are sufficient to state plausible retaliation claims against defendants Purdy and Rodriguez.

**H.     Thirteenth Amendment**

In an exhibit entitled "Request for Relief/Reasons," Doc. #1 at 69, plaintiff quotes the Thirteenth Amendment.  He does not allege any facts, however, indicating that he was required to perform any job duties while incarcerated.

The Thirteenth Amendment bans "enforced compulsory service *of one to another.*"  *McGarry v. Pallito*, 687 F.3d 505, 513 (2d Cir. 2012) (quoting *Hodges v. United States*, 203 U.S. 1, 16 (1908)).  The Second Circuit has held that detainees may be required to perform personally-related chores but may not be required to perform tasks "solely in order to assist in the defraying of institutional costs."  *Id.* at 513-14 (quoting *Jobson v. Henne*, 355 F.2d 129, 132 n.3 (2d Cir. 1966)) (internal quotation marks omitted).  As plaintiff does not allege that he was required to perform any tasks, he has not stated a plausible Thirteenth Amendment claim. Any such claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**I.     Declaration of Human Rights**

Plaintiff argues that the defendants' actions violated his rights under the Universal Declaration of Human Rights.  Although this document possesses "moral authority," it does not "impose obligations as a matter of international law."  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734-35 (2004) (explaining that the Universal Declaration of Human Rights is an international agreement that does

not give rise to legal obligations because it is merely a "statement of principles"); *see also Flores v. Southern Peru Copper Corp.*, 414 F.3d 233, 262 (2d Cir. 2003) (Universal Declaration of Human Rights is non-binding on the United States).

Other Circuits and courts within the Second Circuit have held that the Universal Declaration of Human Rights does not provide a basis for a section 1983 claim. *See United States v. Chatman*, 351 F. App'x 740, 741 (3d Cir. 2009) ("[T]he Universal Declaration of Human Rights is a nonbinding declaration that provides no private right of action."); *Huynh Thi Anh v. Levi*, 586 F.2d 625, 629 (6th Cir. 1978) ("[I]t does not appeal that the Geneva Convention or the Declaration of Rights are in fact treaties in force in the United States."); *Chinloy v. Seabrook*, No. 14-CV-350(MKB), 2014 WL 1343023, at *4 (E.D.N.Y. Apr. 3, 2014)  (citing cases). This claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

III.     Motion for Appointment of Counsel

Plaintiff has filed two motions seeking appointment of *pro bono* counsel pursuant to 28 U.S.C. § 1915.  The Second Circuit repeatedly has cautioned the district courts against the routine appointment of counsel.  *See, e.g., Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 204 (2d Cir. 2003); *Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997).  The Second Circuit also has made clear that before an appointment is even considered, the indigent person must demonstrate that he is unable to obtain counsel.  *Saviano v. Local 32B-32J*, 75 F. App'x 58, 59 (2d Cir. 2003) (quoting *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 173 (2d Cir. 1989)).

In his motions for motion for appointment of counsel, plaintiff lists three

attorney who declined assistance. Plaintiff does not indicate that he contacted Inmates' Legal Aid Program, the organization under contract with the Department of Correction to provide legal assistance to Connecticut inmates. Although program attorneys cannot represent plaintiff, they can provide assistance in crafting discovery requests, drafting motions, or responding to motions filed by the defendants. Absent a denial of assistance from Inmates' Legal Aid Program, plaintiff has not shown that his is unable to obtain legal assistance on his own. Accordingly, plaintiff's motions are denied without prejudice.

## CONCLUSION

Plaintiff's motions to amend the complaint [Doc. #8] and for extension of time to respond to the notice of insufficiency [Doc. #10] are DENIED as moot. His motions for appointment of counsel [Docs. #2 & #7] are DENIED without prejudice to refiling at a later stage of litigation accompanied by evidence that the assistance available from Inmates' Legal Aid Program is insufficient.

All claims against defendants Reischerl, Longo, Maiga, Rinaldi, Cepelak, Quiros, Santarsiero, and Kilham, the claim against defendant Dow relating to sex offender registration, the claim for harassment, and the claims for violation of the Thirteenth Amendment and the Universal Declaration of Human Rights are DISMISSED.

The case will proceed on the claims set forth above for use of excessive force against defendant Purdy, supervisory liability relating to the use of force against defendants Lizon and Rodriguez, denial of due process based on a false accusation against defendant Purdy, denial of substantive and procedural due

20

process against defendant Tugie, denial of procedural due process against defendant Dow, deliberate indifference to health and safety against defendants Rodriguez, Purdy, Tugie, Davis, Robles, Jackson, Lizon, and Semple, and retaliation against defendants Rodriguez and Purdy.

In accordance with the foregoing analysis, the Court enters the following orders:

(1)     Because plaintiff paid the filing fee to commence this action, he is responsible for serving the Amended Complaint on the defendants in accordance with the requirements of Rule 4, Fed. R. Civ. P.  Within thirty days of the date of this order, plaintiff shall effect service of the Amended Complaint on defendants Rodriguez, Purdy, Tugie, Davis, Robles, Jackson, Lizon, Semple, and Dow in their individual capacities by mailing a Notice of Lawsuit form, a Waiver of Service of Summons form, a copy of the Amended Complaint, and a copy of this Order to each defendant.  Plaintiff shall file a notice with the Clerk indicating the date on which he mailed the Notice of Lawsuit and Waiver of Services of Summons forms to the defendants in their individual capacities.

In accordance with the requirements of Rule 4, Fed. R. Civ. P., plaintiff shall also effect service of the Amended Complaint on defendants Rodriguez, Purdy, Tugie, Davis, Robles, Jackson, Lizon, Semple, and Dow in their official capacities by serving a copy of the Summons, Amended Complaint, and this Order on the defendants using the address of the Office of the Attorney General, 55 Elm Street, Hartford, Connecticut 06141.

(2)      The Clerk shall send plaintiff instructions for service of the
Amended Complaint on the defendants in their individual and official capacities,
together with one copy of the Amended Complaint and its exhibits, one copy of
this Order, ten blank Notice of Lawsuit forms, ten blank Waiver of Service of
Summons forms, and one summons form completed and issued by the Clerk for
all defendants (using the address of the Office of the Attorney General, 55 Elm
Street, Hartford, Connecticut 06141).  Plaintiff shall file with the Clerk the signed
Waivers of Service of Summons forms when he receives from the defendants in
their individual capacities.  He shall also file a return of service documenting
when the defendants were served in their official capacities.  If any defendant
fails to return a signed waiver of service of summons form by the date specified,
plaintiff shall arrange for that defendant to be personally served in his or her
individual capacity in accordance with Rule 4(m), Fed. R. Civ. P.

(3)      The Clerk shall send a courtesy copy of the Amended Complaint and
this Order to the Connecticut Attorney General and the Department of Correction
Office of Legal Affairs.

(4)      The defendants shall file their response to the complaint, either an
answer or motion to dismiss, within sixty (60) days from the date the waiver
forms are mailed.  If they choose to file an answer, they shall admit or deny the
allegations and respond to the cognizable claims recited above.  They also may
include all additional defenses permitted by the Federal Rules.

(5)      Discovery, pursuant to Federal Rules of Civil Procedure 26 through
37, shall be completed within seven months (210 days) from the date of this

order.  Discovery requests need not be filed with the court.

(6)     All motions for summary judgment shall be filed within eight months (240 days) from the date of this order.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(9)     Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  Plaintiff is advised that the Program may be used only to file documents with the court.  As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

SO ORDERED.

Dated this 9th  day of July 2019 at Hartford, Connecticut.

23

*Vanessa Lynne Bryant*   Vanessa Bryant
2019.07.08 18:33:30 -04'00'

**Vanessa L. Bryant**
**United States District Judge**