UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CRISPIN                          :          3:19-CV-00413 (VLB)

    V.                           :

REISCHERL, ET AL.                :          MAY 25, 2020


DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION FOR SANCTIONS
ON SPOLIATION OF EVIDENCE

The defendants hereby object to the plaintiff's motion for sanctions on spoliation of evidence (ECF No. 95).

I.    BACKGROUND

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by the plaintiff, filed on March 27, 2019, in an amended complaint.  ECF No. 9.  In his amended complaint, the plaintiff alleged various constitutional violations by the various defendants, including excessive force, violation of due process, deliberate indifference to safety, and retaliation.  Id.  In its initial review order, the Court dismissed several of the plaintiff's claims and multiple defendants from this action. ECF No. 12, pp. 20-21.  The Court permitted multiple claims to proceed regarding conduct that allegedly occurred at Northern Correctional Institution from approximately May, 2018, through January, 2019, when the plaintiff was sentenced and became a sentenced detainee.  See id., pp. 5-9, 13-18, 20-21; see also ECF No. 49, p. 3.

On April 13, 2020, the plaintiff filed a lengthy motion for sanctions on spoliation of evidence, in which he requested that the Court issue sanctions

against the defendants for various alleged instances of spoliation of evidence prior to the plaintiff's instituting this action.  ECF No. 95.  The plaintiff highlighted six alleged instances of spoliated evidence, primarily regarding alleged spoliation of video footage evidence.  Id., pp. 2-10.  The plaintiff's claims specific to each alleged instance will be summarized where applicable below.  The plaintiff also attached multiple exhibits he claims support his allegations of spoliation. Id., pp. 16-76.  The plaintiff requests undefined "sanctions," compensatory damages, and a jury instruction regarding a "presumption of negative inference."  Id., p. 15.

## II.    APPLICABLE LAW

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  West v. Goodyear Tire & Rubber, Co., 167 F.3d 776, 779 (2d Cir. 1999).  "The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis."  Fujitsu Ltd. V. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001).  Sanctions for spoliation of evidence should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party."  West, 167 F.3d at 779.

Rule 37(e) of the Federal Rules provides instruction on how the Court should address allegations that a party failed to preserve electronically stored information, such as video footage.  It provides that "[i]f electronically stored information that

should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court (1) upon finding prejudice to another party from the loss of the information, <u>may</u> order measures no greater than necessary to cure the prejudice."  Fed. R. Civ. P. 37(e)(1) (emphasis added).  Alternatively, the Court may "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume that the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment."  Fed. R. Civ. P. 37(e)(2).  Severe sanctions are not warranted in cases of negligence or gross negligence.  <u>Thomas v. Butkiewicus</u>, 3:13-CV-747 (JCH), 2016 WL 1718368, *7 (D. Conn. April 29, 2016) (explaining that Rule 37(e)(2) makes clear that Rule 37 rejects cases that authorize the imposition of severe sanctions "on a finding of negligence or gross negligence . . . [i]n other words, the new Rule 37(e) overrules Second Circuit precedent on the question of what state of mind is sufficiently culpable . . . when electronically stored evidence is missing").

## III.   ARGUMENT

**A. The plaintiff only alleges conduct reasonably attributable to Defendants Lizon, Jackson, and Davis, and, therefore, any request for sanctions against any other defendant must be denied.**

Aside from baseless speculation, the plaintiff only names three defendants in his recitation of events that he believed amounted to spoliation of evidence. Moreover, two such defendants (Defendants Lizon and Davis) were only named in

connection with the first alleged incident of spoliation.  Defendant Davis is not even alleged to have been involved in any of the plaintiff's request to preserve video footage, even as related to the alleged first incident of spoliation.  Only Defendant Jackson is implicated in the various alleged incidents of video footage spoliation. Accordingly, to the extent that the plaintiff requests that the Court exercise its discretion and find harsh sanctions against <u>all</u> of the defendants, such request is baseless against the majority of the defendants in this action and must be denied.

B. Alleged Spoliation Incident #1 (<u>ECF No. 95, pp. 2-3</u>)

   1.  **Plaintiff's Claims**

The plaintiff alleges that he wrote to Defendant Lizon regarding an issue that he was allegedly having with Defendant Purdy.  ECF No. 95, p. 2.  The plaintiff claims that he informed Lizon that Purdy had assaulted him on May 9, 2018, committed some unspecified sexual harassment, and trashed his cell (including throwing his legal work out).  Id.  The plaintiff claimed to also file an inmate request form addressing the same issues and that both documents were dated July 19, 2018.  Id.  The plaintiff claims that he requested that video of the incident be saved and preserved in the letter and request form.  Id.  The plaintiff then makes reference to both Lizon and Defendant Davis being sufficiently aware of the incidents and duty to preserve video evidence, as well as to investigate and document a reported PREA incident.  Id.

The plaintiff then claimed to have made two additional requests to preserve video evidence by filing Freedom of Information Act (FOIA) requests, one dated July 30, 2018 and one dated September 18, 2018.  Id., p. 3.  The plaintiff claimed

that the defendants intentionally waited to answer his request until the requested evidence could no longer be preserved.  Id.

### 2.  Summary of Evidence

The plaintiff attached several documents to his motion that he alleges supports his claim of intentional spoliation of evidence.  ECF No. 95, pp. 27-34.  The plaintiff attached an inmate request form and letter, both of which appear to be addressed to Defendant Lizon.  Id., pp. 28-31.  The inmate request form has a date, presumably written by the plaintiff, of June 19, 2018, written on it.  Id., p. 28.  The date has a note under it indicating that the request was received on August 8, 2018.  Id.  The letter also has the date June 19, 2018, written at the top of it.  Id., p. 30.  At the bottom of the letter, next to what appears to be the plaintiff's signature and the signature of a notary public, is the date June 25, 2018.  Id.  Following the letter is what appears to be a response from Defendant Lizon, dated August 17, 2018.  Id., p. 31.  There is also a note indicating that the letter, like the inmate request form, was received on August 8, 2018.  Id.

Both the request form and letter set forth allegations that Defendant Purdy and another officer "assaulted" the plaintiff and harassed him.  Id., pp. 28 & 29.  In the request form, set within a parenthetical, is what appears to be a request to save camera footage from June 19, 2018, during the second shift.  Id., p. 28.  There is no additional clarification in the request form regarding the preservation request, as the bulk of the statement in the form sets forth allegations against Defendant Purdy and the other officer.  Id.  A note which appears to be from Defendant Lizon is written at the bottom portion of the request, stating that he has spoken with the 2nd

Shift Commander and Counselor Supervisor Davis.  Id.  The note also instructs the plaintiff to write to Defendant Jackson if he needs a video preserved.  Id.  This note is dated August 17, 2018.  Id.

The letter makes the same allegations against Defendant Purdy and the other officer.  Id., p. 30.  Crammed into the top of the letter appears to be a request submitted under FOIA to preserve security video from 6:00pm to 8:00pm on May 9, 2018, and Second Shift on July 19, 2018.  Id.  The note following the letter from Defendant Lizon, dated August 17, 2018, again states that the plaintiff must request video preservation from Defendant Jackson.  Id., p. 31.

Per Defendant Jackson, who was the administrative captain at the time and was, as part of his duties, responsible for responding to inmate video preservation requests, Defendant Lizon was correct is informing the plaintiff that a request to preserve video footage must be directed to Defendant Jackson, not Defendant Lizon.  Ex. A, Declaration of Brian Jackson, ¶¶  3, 14.

 The plaintiff also attached to his motion a letter, dated by the plaintiff September 18, 2018, addressed to Defendant Jackson requesting preservation of certain video footage under the state FOIA.  Id., p. 35.  Specifically, the plaintiff requested preservation of security video from May 9, 2018, between the hours of 6:00pm to 8:00pm; July 19, 2018, between the hours of 5:00pm and 8:30pm; and September 19, 2018, between the hours of 2:30pm and 7:50pm.  Id.  Per DOC records, this request was stamped as received on October 11, 2018.  Ex. B, p. 5; Ex. A, ¶ 15.  The request contained no indication regarding what was contained in the requested video footage.  Ex. B, p. 5; Ex. A, ¶ 20.

As the administrative captain, part of Defendant Jackson's duties was to respond to inmate requests to preserve video footage.  Ex. A, ¶ 3.  Per his regular practice, Defendant Jackson reviewed each request when it was received, and determined whether such request had been properly made and whether such requested video remained available for download and preservation.  Id., ¶ 4.  He would then provide a written response to the requester regarding whether the requested video had been preserved or why the request was denied or could not otherwise be fulfilled, if applicable.  Id.  If a request was properly made, and the video remained available for download, Defendant Jackson would download the requested video to a CD and provide the video a designation. Id., ¶ 5.  This designation would be shared with the requester in any written response.  Id.

When he received the plaintiff's requests on October 11, 2018, Defendant Jackson reviewed the available video data to determine whether the request could be fulfilled.  Ex. A, ¶ 16.  On October 12, 2018, Defendant Jackson wrote to the plaintiff to inform him that the September 19, 2018 footage had been preserved, but that the May and July footage was no longer available for download.  Ex. B pp. 1, 4; Ex. A, ¶¶ 17-18.  This was the only request to preserve this particular footage that Defendant Jackson had received from the plaintiff.  Ex. A, ¶ 19.

3.  The plaintiff's request for sanctions must be denied.

First, the plaintiff makes an allegation that the defendants somehow "spoliated" evidence in their alleged failure to document and report a PREA incident, claiming the allegedly non-created report itself was "evidence."  ECF No. 95, p. 2.  The plaintiff cannot seek sanctions for spoliation of "evidence" based on

a party's alleged failure to <u>create</u> evidence.  Simply put, the failure to create evidence is not spoliation.  <u>R.F.M.A.S., Inc. v. So</u>, 271 F.R.D. 13, 40 (2010).  To the extent that the plaintiff seeks sanctions against defendants Lizon and Davis for their alleged failure to investigate and report on a claim made by the plaintiff, the Court must deny such request for sanctions.

The plaintiff's claims for sanctions related to alleged intentional spoliation of video footage from May 9, 2018, and July 19, 2018, must also be denied.  First, the plaintiff has made no real effort in his motion to specify what specific conduct was allegedly captured on this video footage.  Rather, the plaintiff leaves the Court and defendants to assume what could be contained on said video.  Without such elaboration from the plaintiff, he has completely failed to demonstrate how such evidence was so essential to his case that he is prejudiced without access to it, or even how such video footage is relevant to his ability to demonstrate his claims of constitutional violations.  It is improper for the plaintiff to ask the Court to make assumptions regarding the relevance of such evidence or the prejudicial impact of the absence of this video footage, especially when he seeks such harsh sanctions against the defendants.

Moreover, there is absolutely no evidence before the Court for it to reasonably find any intention by the defendants to destroy such video footage for the purpose of denying the plaintiff's ability to use it in reasonably anticipated future litigation.  The plaintiff presents the Court with two documents addressed to Defendant Lizon.  Both documents contain requests for video preservation that appear to be an afterthought/add-on to his larger complaint regarding alleged

improper behavior by DOC officers.  Both documents were also not noted as even received by Defendant Lizon until August 8, 2018.[1]  Lizon's response, dated August 17, 2018, clearly instructs the plaintiff that he needs to contact Defendant Jackson for video preservation requests.  The plaintiff did not even bother to submit such request to Defendant Jackson until, at the earliest, September 18, 2018 (of course, the request ostensibly dated September 18, 2018, was not even received by the NCI FOIA office until October 11, 2018).  By the time that Jackson received the plaintiff's request to preserve video footage, it was no longer available for preservation, as it had already been overwritten by NCI's video surveillance system.  Ex. A, ¶ 17; see also id., ¶¶ 8-9.  Thus, it was the plaintiff's own delay, and failure to timely submit his preservation request to the proper official, that led to the inability to fully preserve the video that the plaintiff requested.

It is also noteworthy that the plaintiff's request to Defendant Jackson included no discussion of what was contained in the video that he requested preservation of.  Per Defendant Jackson, he did not consult with any of the defendants in this matter regarding the plaintiff's request for video preservation. Ex. A, ¶ 12. Defendant Jackson simply followed his normal procedure of reviewing the request, making a determination of whether the video was still available for preservation, and ultimately either preserving the video per the request or denying the request and sending written documentation to the requesting inmate.  Id., ¶¶ 4,

---

[1] A theme among the various documents before the Court is the plaintiff's habit of either back-dating documents that he has submitted to DOC officials or waiting until well-after he has dated them to actually submit them.  The plaintiff also wrote multiple dates on various documents he claims to have submitted to DOC officials.

13.  At best, the plaintiff simply included language, as he appeared to include in any request, that such video was needed for 'legal use."  Thus, aside from the plaintiff's own unfounded accusations and conspiracy theories, there is no basis to find that Defendant Jackson even had reason to reasonably anticipate that this would be relevant to any future civil litigation.  The plaintiff's vague reference to requiring such video preservation in civil litigation appears to be more akin to a legal threat against Defendant Jackson rather than true establishment of any reasonable basis to expect that said video footage may likely be evidence in future civil litigation.

Lastly, as indicated by Defendant Jackson, some video footage related to the plaintiff from May 9, 2018, had previously been preserved related to a prior investigation of the plaintiff's claims against CO Purdy and another officer.[2]  Ex. A, ¶ 21.  Defendant Jackson failed to recall such preservation had occurred when he received the plaintiff's September 18, 2018 request several months later.  Id., ¶¶ 21-22.  Thus, Defendant Jackson's denial in October 2018 was based on his review of the system and determination that such date-range of footage was no longer available when he received the plaintiff's request.  Id., ¶¶ 13, 17. First, the prior preservation of footage from May 9 demonstrates that DOC had, in fact, preserved some of the video evidence that the plaintiff claims was intentionally "destroyed" to prevent the plaintiff's later use of it in court.  Moreover, such preservation renders implausible the plaintiff's current claim that Defendant Jackson, or any

---

[2] The plaintiff was already provided access to such video footage as part of discovery in this matter prior to his filing this motion for sanctions regarding, in part, the allegedly intentional allowance of the destruction of such footage.

other defendant in this matter, subsequently allowed the intentional destruction of video footage that had already been partially preserved because of some nefarious desire to hinder the plaintiff's as yet unfiled legal action.

For these reasons, the plaintiff has not adequately demonstrated why the Court should use its discretion to impose such harsh sanctions on the defendants and the plaintiff's motion must be denied.

### C. Alleged Spoliation Incident #2 (ECF No. 95, p. 4)

#### 1. Plaintiff's Claims

The plaintiff alleges that he made a request to preserve certain video evidence to Defendant Jackson at some point in December 2018.  ECF No. 95, P. 4.  The plaintiff alleges that he "made clear" that his request was made "for civil legal use to prove abuse of the grievance procedure."  Id.  The date of the request and the date of the video that he was requesting is not clear in the plaintiff's motion, as he references both December 20, 2018, and December 18, 2018.  Id.  From the language in his motion, the plaintiff appears to be stating that he requested preservation in a document dated December 20, 2018, and the video to be saved was from December 18, 2018.  Id.  Later, however, the plaintiff appears to suggest that the request was dated December 18, 2018.  Id.  Still later, he states that it was dated December 20, 2018.  Id., p. 35.  The plaintiff claims that Jackson destroyed the evidence that he needed "to prove his case."  Id., P. 4.

#### 2. Summary of Evidence

In support of his claim, the plaintiff attached what appears to be a letter addressed to Defendant Jackson.  ECF No. 95, p. 36.  The letter appears to have

originally been dated December 18, 2018, but has that crossed-out and the date December 20, 2018, written instead.  Id.  There is no evidence on the attachment that it was ever actually sent to Defendant Jackson.  The document requests preservation of security footage from December 20, 2018, from 1:00pm to 1:35pm. Id.  The request notes that it is to "prove manipulation of grievance procedure."  Id.

Defendant Jackson has no record nor recollection of ever receiving this purported request to preserve such video footage.  Ex. A, ¶ 24.  Defendant Jackson did preserve video from December 18, 2018, 1:00pm to 3:00pm.  This was related to a January 1, 2019 request from the plaintiff, however.  Id., ¶ 26.  This video, logged as NCI-VP-19-0047, contains video footage from 1:00pm to 3:00pm of cell 124 in 1-West housing at NCI.  Id.

3.  The plaintiff's request for sanctions must be denied.

Again, the plaintiff seeks severe sanctions against the defendants without even bothering to make clear to the Court or the defendants what exact evidence he believes was captured in the video that he allegedly requested to be preserved. Moreover, the plaintiff's motion and his attachments fail to even clarify the exact date of the footage that he was seeking.

As noted, the plaintiff's motion suggests that he was seeking footage from December 18, 2018.  ECF No. 95, P. 4.  The plaintiff's attachment, however, suggests that he was seeking footage from December 20, 2018.  Id., p. 36.  Additionally, there is absolutely no indication when or if the plaintiff actually sent this request to NCI FOIA.  Defendant Jackson has no record or recollection of ever receiving this request from the plaintiff.  Of note, however, is that Defendant Jackson did have a

record of receiving a request from the plaintiff, dated January 1, 2019.  Per this request, Defendant Jackson preserved video footage from December 18, 2018. Without even bothering to provide a clear or cogent argument to the Court regarding what exactly was contained in this video footage and why it was necessary to the presentation of his constitutional claims, the plaintiff cannot meet his burden in persuading the Court to use its discretion in exacting such a severe measure as the sanctions that the plaintiff seeks.

What little information is available regarding what may be contained on this video footage in no way supports a conclusion that the plaintiff is prejudiced in presenting his claims without it.  The plaintiff appears to believe that the footage contains documentation of something related to "grievance procedure" manipulation.  The plaintiff has alleged various constitutional violations against the remaining defendants in this action.  Alleged impropriety in the grievance process is not an element of any of his remaining constitutional claims.  Indeed, failure to follow the grievance process does not even support a claim of constitutional violation.  See Green v. Martin, 224 F.Supp.3d 154, 170 (D. Conn. 2016); Johnson v. New York City Dept. of Health, No. 06-Civ-13699 (BSJ) (FM), 2008 WL 5378124, at *3 (Dec. 22, 2008).

Finally, as Defendant Jackson notes, any surveillance video, even if it had been preserved, would have contained no accompanying audio. Ex. A, ¶ 10.  Thus, at best, such video would show individuals, at a distance, passing in front of or stopping at the plaintiff's cell.  There would be no indication of what was said.  It is unclear what value such evidence would add to the plaintiff's claims, especially in

light of his own ability to presumably provide first-hand testimony based on his personal experiences.

For these reasons, the plaintiff has not adequately demonstrated why the Court should use its discretion to impose such harsh sanctions on the defendants and the plaintiff's motion must be denied.

**D. Alleged Spoliation Incident #3 (<u>ECF No. 95, p. 5</u>)**

**1. Plaintiff's Claims**

The plaintiff alleges that he made a request to Defendant Jackson to preserve video from January 10, 2019.  ECF No. 95, P. 5.  The plaintiff does not indicate in his motion when he allegedly sent or dated this request, nor does he elaborate on what video he wanted preserved (i.e. timeframe or location).  Id.  He alleges that this video demonstrated that he stopped Defendant Jackson on January 10, 2019, and discussed something.  Id.  It is not clear from the motion what exactly the plaintiff is referring to as having allegedly been discussed on January 10, 2019. Id.  The plaintiff claims that Jackson destroyed evidence that the plaintiff would use in his civil claim.  Id.

**2. Summary of Evidence**

In support of his claim, the plaintiff attached what appears to be a letter to Defendant Jackson, on which the plaintiff has written the date January 14, 2019. ECF No. 95, p. 38.  In this document, he appears to request preservation of video footage from January 10, 2019, between the hours of 1:00pm to 1:45pm.  Id.  He states that, on that date, he discussed his last request to preserve video footage. Id.  The plaintiff does not specify what request he is referring to, nor does he clarify

whether he is referring to a discussion that he allegedly had with Defendant Jackson.  Id.  In presumably representing what he discussed on January 10, 2019, the plaintiff states that he addressed some issue that he had with the administrative remedies coordinator refusing to answer a grievance that he filed related to how a previous disciplinary ticket was answered.  Id.  He also seems to claim that he discussed an issue with his administrative segregation appeal not having been answered after thirty days.  Id.  He concludes the document by stating "save and preserve as proof in legal use."  Id.

Defendant Jackson has no record nor recollection of ever receiving any request from the plaintiff to preserve video footage from January 10, 2019.  Ex. A, ¶ 28.

    3.  The plaintiff's request for sanctions must be denied.

The footage that the plaintiff alleges was "destroyed" in this claim appears even more irrelevant than the video footage he claims was "destroyed" from December 2018.  See supra, § III (C).  As before, the plaintiff offers no real clarification in his motion regarding what was allegedly contained in this video footage, or why it is essential to his present legal claims.  At best, the plaintiff appears to claim that this footage would show that Defendant Jackson stopped at the plaintiff's cell on January 10, 2019.  During which time, the plaintiff seems to allege that he discussed prior issues with Jackson.  As noted before, even if video footage had been preserved, it would contain no audio.  Thus, it is unclear what value such video evidence would provide.  If relevant, the plaintiff can presumably testify based on his own first-hand knowledge of events.

More important, however, is the plaintiff's failure to offer any argument to the Court regarding why this evidence is so essential to his proving his constitutional claims that the Court should place such harsh sanctions on the defendants.  As before, the plaintiff appears to be referring to issues that he claims to have had with grievance procedure (here, he does not even appear to claim that this video footage contained anything related to the grievances themselves, only footage of him complaining to Defendant Jackson about the grievances).  This is notwithstanding the fact that there is no corroboration that such request was ever made to Defendant Jackson, and Defendant Jackson has no record or recollection of receiving such request.

Lastly, there is simply no way for the plaintiff to adequately demonstrate any intentional action by Defendant Jackson, or any other defendant, to allow such video footage to be overwritten and therefore unavailable for use at some prospective civil litigation.  As noted, it is not a constitutional violation to manipulate grievance procedure, even if such conduct had occurred.  Thus, there is no reasonable basis to conclude that any defendant would have any nefarious or malicious purpose in ignoring a request to preserve video footage from January 10, 2019.  Such video footage is not clearly related to any reasonable legal claim and offers such limited value, if any.

For these reasons, the plaintiff has not adequately demonstrated why the Court should use its discretion to impose such harsh sanctions on the defendants and the plaintiff's motion must be denied.

**E. Alleged Spoliation Incident #4 (ECF No. 95, p. 6)**

**1. Plaintiff's Claims**

The plaintiff claims that he notified Defendant Jackson through a FOIA request dated October 16, 2018, to preserve certain video footage that he fails to specify in his motion.  ECF No. 95, p. 6.  He alleges that he informed Defendant Jackson that the request was "time sensitive and for legal use."  Id.  The plaintiff states that the request was denied by Defendant Jackson and that he then resubmitted his request and sent it back with "detailed reasons" regarding why he needed the videos preserved, but Defendant Jackson did not respond to the follow-up request (allegedly dated October 27, 2018) or a second request (allegedly dated November 5, 2018).  Id.  The plaintiff argues that Defendant Jackson's actions show that he intentionally acted to destroy evidence.  Id.

**2. Summary of Evidence**

On October 24, 2018, the NCI FOIA office received two separate requests from the plaintiff to preserve various date-ranges worth of video footage.  Ex. A, ¶¶ 30, 32; Ex. B, pp. 12, 14-15.  One request had two dates written on it, presumably authored by the plaintiff: September 18, 2018, and October 2, 2018.  Ex. A, ¶ 30; Ex. B, p. 12.  This first request is addressed to Defendant Jackson and another DOC officer.  Ex. B, p. 12.  It requests preservation of, inter alia, certain date-ranges of video footage, including: 1) September 14, 2018, through September 27, 2018, between the hours of 3:00pm to 11:00pm, and 2) September 27, 2018, through October 12, 2018, between the hours of 3:00pm to 11:00pm.  Ex. A, ¶ 31; Ex. B, p. 12.  The plaintiff specifically requested, for both date ranges, preservation of NCI

1-West block camera between cells 104 through 110 close up to identify any officer that passed by those cells.  Id.  This request was stamped as received by the NCI FOIA office on October 24, 2018.  Ex. B, p. 12.

The second request also has two dates written on it, presumably authored by the plaintiff: October 15 and 16, 2018.  ECF No. 95, p. 44; Ex. A, ¶¶ 32-33; Ex. B, p. 14.  The second document requests preservation of, inter alia, certain date-ranges of video footage, including: 1) September 14, 2018, through September 27, 2018, between 7:00am and 3:00pm, 2) September 27, 2018, through October 16, 2018, between 7:00am and 3:00pm, and 3) September 27, 2018, through October 16, 2018, between 3:00pm and 11:00pm.  Id.  The plaintiff, again, specifically requested, for all date ranges, preservation of footage of cells 104 through 110 close up to identify any officer that passed by those cells.  Id.  This request was stamped as received by the NCI FOIA office on October 24, 2018.  ECF No. 95, p. 44; Ex. B, p. 12.

Accordingly, in total over the two requests received by the NCI FOIA office on October 24, 2018, the plaintiff requested preservation of video footage from September 14, 2018, through October 16, 2018, between the hours of 7:00am and 11:00pm.  The total requested period of footage requested was approximately 512 hours.  Ex. A, ¶ 34.

On October 24, 2018, Defendant Jackson wrote separate responses to the plaintiff regarding each request.  ECF No. 95, pp. 42-43; Ex. A, ¶ 39; Ex. B, pp. 11, 13.  Jackson denied the plaintiff's requests to preserve the voluminous amount of video footage.  Id.  In denying each request, Jackson indicated that the requests

were "both burdensome and considered to be personal surveillance, as well as not being related to a specific 'incident.'"  Id.  Jackson noted that the FOIA office "does not conduct investigations at [inmate] request, nor does it provide video for overly burdensome request."  Id.  Jackson also advised the plaintiff that video preservation requests "should be timely and specific in nature to describe the 'incident' [the inmate] is trying to capture," and that "generic requests for 'personal surveillance' will not be honored."  Id.  Defendant Jackson retained discretion in reviewing video preservation requests to deny requests for the reasons indicated above and that violate the Administrative Directive requirements.  Ex. A, ¶¶ 35, 11.

The plaintiff claims to have offered explanation to Defendant Jackson after the rejection.  In support of this, the plaintiff attached several documents to his motion.  One document appears to be an inmate request form, addressed to Defendant Jackson, on which the plaintiff wrote the date October 27, 2018.  ECF No. 95, p. 40.  The request appears to be a copy that the plaintiff wrote for himself, and he seems to claim that he sent a copy to Defendant Jackson.  Id.  In this request, the plaintiff states that he wrote letters to Defendant Jackson in which he explained why, in detail, he needed the videos that he asked to be saved and were denied by the October 24, 2018 letters from Defendant Jackson.[3]  Id.  A second document appears to be another inmate request form addressed to Defendant Jackson, on which the plaintiff has written the date November 5, 2018.  Id., p. 41.

---

[3] The date/sequence of these pieces of "evidence" offered by the plaintiff are incredibly unclear and vague.  It is also incredibly unclear which of these documents are alleged to have been sent to Defendant Jackson together, if any.  The plaintiff has improperly left the Court and defendants to speculate on these details.

In this request, the plaintiff appears to again be referencing Defendant Jackson's October 24, 2018 denial and referencing a response that he claims to have sent Defendant Jackson.  Id.  Finally, the plaintiff attached copies of Jackson's October 24, 2018 denial letters, on which the plaintiff has written various comments.  Id., pp. 42-43.  On one of the documents, the plaintiff appears to make a general comment that the request to preserve sixteen daily hours (spanning two different DOC shifts) every day for over a month period, is for his use to "prove all the instances (c/o) Purdy stopped by [his] cell threating [him]" as he claims a witness of his has expressed.  Id., p. 42.  Some of the video also appears to be claimed needed to show times that CO Purdy was allegedly in the plaintiff's unit at the time that the plaintiff seems to think CO Purdy should not have been there.  Id., p. 43.

There is no additional information provided, including why multiple shifts were requested for every single day over more than a one-month period if the plaintiff was looking for instances in which a single DOC officer passed by his cell. Nor was there any attempt to narrow the original focus of the plaintiff's requests. There is also no corroboration or verification of when, or even if, the plaintiff sent these documents to the NCI FOIA office or Defendant Jackson.  Defendant Jackson has no record nor recollection of ever receiving anything from the plaintiff following the October 24, 2018 denial letters.  Ex. A, ¶ 40.

3.  The plaintiff's request for sanctions must be denied.

Again, the plaintiff's motion itself provides no argument or clarification regarding what is allegedly contained on the hours of video footage that he requested to be preserved or how such footage is so essential to his ability to

present his constitutional claims that the failure to preserve such evidence warrants that the Court impose severe sanctions upon the defendants. The plaintiff, rather, again leaves the Court and defendants to make assumptions regarding such video footage and its relevance. If the plaintiff cannot be bothered to offer such explanation in his motion, the Court should not use its discretion to impose harsh sanctions on the defendants.

The only place that the plaintiff wrote anything regarding what he believed was contained in the over 500 hours of footage that he requested that Defendant Jackson preserve was in hand-written notes on Jackson's initial denial of the plaintiff's request. First, there is, again, no corroboration or verification that the plaintiff ever sent this information to the NCI FOIA office or Defendant Jackson, and Defendant Jackson has no record of recollection of ever receiving such request. More importantly, however, is that it is unclear what value such video footage would have provided to the plaintiff's claims, based on what he alleged to have been recorded in them. Again, NCI surveillance footage contains no audio. Per the plaintiff's hand-written notes, the footage would have, at best, shown CO Purdy pass by or stop at the plaintiff's cell.

Moreover, Defendant Jackson had ample neutral justification for denying the plaintiff's overly burdensome request. In his combined requests, the plaintiff wanted preservation of over a month's worth of video footage at sixteen hours a day. This amounted to over 500 hours of video footage and, per Defendant Jackson, would have taken approximately 20 hours to fulfill. Ex. A, ¶ 36. The plaintiff's requests also simply stated that he wanted to see any officers who

passed by his cell.  Per Jackson, DOC does not honor requests from inmates to preserve video footage that is simply aimed at personal surveillance.  Id., ¶ 35.  The plaintiff offered no incident or event that he claimed occurred.  Accordingly, Jackson had ample justification for his denial.  See Ex. A, ¶¶ 37-38.

Even if the plaintiff did send to Defendant Jackson his handwritten notes regarding why he believed he needed the video preserved, it is noteworthy that, rather than attempt to narrow the focus of his request to a more reasonable time period, the plaintiff simply demanded that Defendant Jackson preserve the video footage.  Defendant Jackson's indication, also, was that even if he had received the plaintiff's proposed "explanation," the request still was overly burdensome and improperly aimed at personal surveillance with no link to a specific event or incident.  Id., ¶¶ 40-42.

In sum, Jackson had no reason to believe that such video footage would relate to any likely future civil litigation, there is no reason to find that the lack of such evidence prejudices the plaintiff's constitutional claims, and there no evidence to reasonably suggest that Jackson had any motive in denying the plaintiff's request other than that it was overly-burdensome and an attempt by a current inmate to improperly conduct personal surveillance.  For these reasons, the plaintiff has not adequately demonstrated why the Court should use its discretion to impose such harsh sanctions on the defendants and the plaintiff's motion must be denied.

**F.  Alleged Spoliation Incident #5 (<u>ECF No. 95, pp. 7-8</u>)**

**1.  Plaintiff's Claims**

The plaintiff claims that he notified the defendants (unspecified in the motion) on February 4, 2019, by an inmate request form and two letters of his request to preserve certain video footage (the plaintiff's motion does not itself specify what video evidence he was requesting to be preserved in these requests). ECF No 95, p. 7.  The plaintiff claims that he indicated that such video related to use in a "legal civil action" as "evidence".  Id.  The plaintiff states that he subsequently sent a letter by U.S. mail again asking that such evidence be preserved once he was transitioned into Phase Two of the Administrative Segregation Program and transferred to Walker Correctional Institution.  Id.  The plaintiff then states that he received a letter from Defendant Jackson, dated March 5, 2019, refusing his request to preserve certain video footage.  Id.  The plaintiff sought assistance from the Inmate Legal Aid Program (ILAP).  Id.  The plaintiff alleges to have written a letter dated March 21, 2019, in which he explained that he informed Defendant Jackson of why he required the video footage preservation and that he did so verbally.  Id., p. 8.  The plaintiff then claims to have spoken with an ILAP attorney and received a letter from an ILAP attorney, dated May 14, 2019, indicating that she had been informed that videos had been corrupted.  Id.

**2.  Summary of Evidence**

Sometime after February 24, 2018, Defendant Jackson received a package from the plaintiff regarding requests to preserve certain video footage. Ex. A, ¶ 43; Ex. B, pp. 17-20.  The package contained a letter, dated by the plaintiff February 13,

2019, which referenced two requests to preserve video evidence that the plaintiff claimed to have sent on February 4, 2018.  ECF No. 95, p. 52; Ex. B, p. 17.  The package also contained copies of the requests that the plaintiff claimed to have already sent on February 4, 2018.  Ex. B, pp. 18-19.  Across these two requests, the plaintiff asked for preservation of security footage of cell 124 in 1-West at NCI from January 21 through 25, 2019, between 7:00am and 3:00pm each day, as well as January 28, 2018, between the hours of 7:00am and 3:00pm.  ECF No. 95, pp. 54-55; Ex. A, ¶ 44; Ex. B, pp. 18-19.  The plaintiff offered no explanation for why such preservation was requested, other than to state that this was evidence to prove and support his "claim in civil court of all activity by" his cell through these shifts.  ECF No. 95, pp. 54-55; Ex. A, ¶ 45; Ex. B, pp. 18-19.

On March 5, 2019, Defendant Jackson wrote a letter to the plaintiff indicating that his two requests for preservation were denied.  ECF No. 95, p. 51; Ex. A, ¶¶ 46-47; Ex. B, p. 16.  Jackson noted that "this office does not conduct investigations at [Crispin's] request, nor does it provide video for overly burdensome requests or personal surveillance."  Id.  Jackson went on to note that there was "no claim of an incident involving" the plaintiff on the dates he requested, nor was there any record of the plaintiff "having received a [disciplinary report] since November, 2018."  Id.  Jackson advised the plaintiff that his requests should be timely and specific in nature to describe the "incident" he is trying to capture, and that generic requests for "personal surveillance" will not be honored.  Id.  Jackson had no record or recollection of receiving any additional information from the plaintiff related to this denied request.  Ex. A, ¶ 48.

The plaintiff attached documentation that appears to show that he contacted ILAP regarding the denied request.  In a letter dated March 12, 2019, an ILAP attorney informed the plaintiff that she looked into the request and was informed that the plaintiff had initially asked for video from January 21, through January 22, 2019, between 7:00am and 3:00pm, and January 28, 2019, between 7:00am and 3:00pm.  ECF No. 95, p. 49.  The ILAP letter indicated that, because the plaintiff had failed to provide any explanation for the need for the preservation, it was denied on March 5, 2019.  Id., pp. 49-50.  The ILAP attorney requested that the plaintiff provide her an explanation regarding the need for the preservation, and that she could then contact the DOC official.  Id., p. 50.  She also told the plaintiff to keep in mind that the videos may not still be available in the DOC system.  Id.  The plaintiff also attached what appears to be a letter that he wrote to the ILAP attorney that he dated March 21, 2019.  Id., p. 48.  In this letter, he claims that he needed preservation of video from January 21, 2019, through January 28, 2019, between the hours of 7:00am and 3:00pm.[4]  Id.  The plaintiff claims that he properly requested this and already notified DOC of these requests.  Id.  He failed, however, to address the ILAP attorney's request for an explanation of why the preservation was needed, other than what appears to be a vague reference to the video footage concerning when he did or did not receive administrative remedies documents.  Id.

The plaintiff also attached a letter from ILAP dated May 14, 2019.  Id., p. 47. The letter appears to be incomplete and it is unclear who this letter is from.  Id.  It

---

[4] This is the first reference to any desire for video from January 26 or 27, 2019. The plaintiff's request to Defendant Jackson did not include these dates.

references a conversation that took place between ILAP and the plaintiff on April 30, 2019.  Id.  It states that, during this conversation, they apparently discussed a claim that DOC had destroyed video evidence requested by the plaintiff.  Id.  There is also reference to the ILAP individual having been informed by the FOIA office that video from the plaintiff's "incident" had been "corrupted" and was no longer available for review.  Id.  The letter appears to go on to discuss spoliation of evidence.  Id.  There is no detail offered regarding what video footage was alleged to have been corrupted, or what incident this video footage allegedly pertained to. Id.  Per Defendant Jackson, no video footage requested by the plaintiff from January 21 through January 25, and January 28, 2018, was preserved, per Jackson's denial of the plaintiff's request. Ex. A, ¶ 51.  Accordingly, no such video footage existed to become subsequently "corrupted."

3.  The plaintiff's request for sanctions must be denied.

Yet again, the plaintiff fails to offer any argument or clarification in his motion as to what he believed was contained in the unpreserved video footage, or why it is so essential to his claim that the failure to preserve said footage warrants severe sanctions against the defendants.  At best, the Court and defendants are left to assume as to the content based on his vague reference to the video pertaining to issue that he had with his administrative remedies.  For this reason alone, the Court should deny the plaintiff's motion for failure to properly support his request that the Court exercise its discretion and issue harsh sanctions against the defendants.

Moreover, to the extent that the plaintiff, in his letter to an ILAP attorney, appears to claim that this video footage in some way relates to issues that he had

with filing his administrative grievances, the plaintiff's request for sanctions is flawed just as his prior requests based on grievance issues were flawed.  See supra, § III (C) and (D).  There is no indication regarding how the lack of such video evidence (which, again, will contain no audio) prejudices the plaintiff's ability to present his constitutional claims at trial.  This is especially true where the plaintiff will, presumably, be able to testify, to the extent relevant, based on his personal knowledge and experiences.

Similarly, there is no evidence here for the Court to infer any improper motive or intent by Defendant Jackson to deprive the plaintiff of evidence needed for some future litigation.  The request to Jackson contained no indication whatsoever regarding what the evidence allegedly pertained to, beyond a vague reference to a civil action.  As previously, Defendant Jackson properly exercised his discretion and denied the plaintiff's request because it was, again, overly burdensome, unrelated to any specific incident or event, and, rather, aimed at improper personal surveillance.

As to the plaintiff's correspondence with ILAP, there is no indication that any explanation for the need for the video was ever shared with Defendant Jackson, and he has no record or recollection of receiving any such response to his denial.  Ex. A, ¶ 48.  Having reviewed the plaintiff March 21, 2019, letter in relation to this motion for spoliation sanctions, however, Defendant Jackson noted that it was unlikely that the plaintiff's requested video from January, 2019, would have still been available for download when he claims to have sent an explanation to the ILAP attorney on March 21, 2019.  Id., ¶ 49.  Finally, the plaintiff's letter to the ILAP

attorney failed to even provide the attorney with what was requested, an explanation of what was allegedly contained in the requested video footage and the plaintiff made no attempt to narrow the request to make it more reasonable. ECF. No. 95, p. 48; Ex. A., ¶ 50.

Regarding the reference to "corrupted" video in the May ILAP letter, the letter lacks any context or details whatsoever.  There is no indication regarding what video evidence was allegedly corrupted.  Moreover, per Defendant Jackson, there is no way that such "corrupted" video could have been the video the plaintiff believes was destroyed in this particular incident, as no such video was preserved in the first place.  Rather Defendant Jackson denied the plaintiff's request because it was overly burdensome, not related to any particular event or incident, and aimed at improper personal surveillance by a DOC inmate.

For these reasons, the plaintiff has not adequately demonstrated why the Court should use its discretion to impose such harsh sanctions on the defendants and the plaintiff's motion must be denied.

G. Alleged Spoliation Incident #6 (ECF No. 95, p. 9)

1. Plaintiff's Claims

The plaintiff argues that unspecified individuals at DOC "are refusing to file and document a large number of" grievance forms at Garner Correctional Institution (GCI).  ECF No. 95, p. 9.  He alleges that this somehow amounts to "destruction of evidence."  Id.  The plaintiff subsequent references the "prison commissioner and director of health serves" having "stonewalled and blocked" his GCI legal mail.  Id.  The plaintiff also appears to argue that various individuals

unconnected to the current defendants in this action have somehow impacted his ability to file administrative remedies (which, from the individuals referenced, appear unrelated to NCI or the time period at issue in this litigation).  Id., pp. 12-13.

### 2.  Summary of Evidence

The plaintiff attached multiple document to his motion that he believes support his claim.  ECF No. 95, pp. 57-76.  These documents appear to be envelopes which were sent to DOC officials in March, 2020, and requests dated in late 2019 or early 2020.  Id.  They all appear to be directed at or concerning GCI officials.  Id.

### 3.  The plaintiff's request for sanctions must be denied.

This case concerns the plaintiff's allegations of various constitutional violations against <u>NCI</u> officials for conduct allegedly undertaken at <u>NCI</u>.  Such conduct is alleged to have occurred during 2018, concluding, at the latest, in January 2019 before the plaintiff's sentencing and transition to convicted detainee status.  There are no claims in this action currently against any GCI officials, and certainly no claims that extend into late 2019 and early 2020.  There is not even an attempt to link the plaintiff's claims of "spoliation" to any of the defendants in this matter.  Accordingly, the plaintiff's request for sanctions in this matter against the defendants for conduct allegedly undertaken at GCI regarding issues at GCI well after the time period at issue in this case is wholly improper and must be denied.

## IV.   CONCLUSION

The plaintiff's motion, and the exhibits he has attached in support of his motion, fail to demonstrate any reasonable basis to find that the defendants destroyed evidence 1) that was reasonably foreseeable to be related to future

litigation, 2) that was relevant to the plaintiff's current constitutional claims and therefore prejudices him, and 3) with any improper motive to deprive the plaintiff of use of said evidence in this litigation.

WHEREFORE, the defendants respectfully request that the Court deny the plaintiff's motion for sanctions against the defendants regarding alleged spoliation of evidence.

Respectfully submitted,

DEFENDANTS,
Rodriguez, Purdy, Tugie, Davis, Lizon,
Robles, Jackson, Semple, and Dow

WILLIAM TONG
ATTORNEY GENERAL

BY: ____/s/_____
Jacob McChesney
Assistant Attorney General
Federal No. ct30282
110 Sherman Street
Hartford, CT  06105
Telephone: (860) 808-5450
Fax No.: (860) 808-5591
E-Mail: Jacob.Mcchesney@ct.gov

## CERTIFICATION

I hereby certify that on or about May 25, 2020, a copy of the foregoing was filed electronically.  Parties may access this filing through the Court's system.  A copy shall also be sent to the following by first-class mail, postage prepaid:

Jossean Crispin #339978
Cheshire CI
900 Highland Avenue
Cheshire, CT  06410

____/s/_____
Jacob McChesney
Assistant Attorney General