UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **JOSSEAN CRISPIN,** | : | 3:19-cv-00413-VLB |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| **REISCHERL,** *et al.* | : | |
| *Defendants*. | : | MAY 25, 2020 |

## DECLARATION OF BRIAN JACKSON

I, Brian Jackson, do declare under penalty of perjury that the following is true and correct and is based upon my personal knowledge:

1. I was formerly employed as a correctional captain for the State of Connecticut Department of Correction (DOC), and was so employed during relevant periods in 2018 and 2019.

2. At relevant times in 2018 and 2019, I held the role of Administrative Captain at Northern Correctional Institution (NCI).

3. As part of my duties as Administrative Captain, I reviewed inmate video preservation requests, fulfilled such requests where feasible and appropriate, and drafted responses to inmates regarding such requests. I also had occasion to review and preserve video data at the request of DOC correctional staff and other non-DOC individuals.

4. Per my regular practice, I reviewed each request when it was received, and determined whether such request had been properly made and whether such requested video remained available for download and preservation. I would then provide a written response to the requester regarding whether the

requested video had been preserved or why the request was denied or could not otherwise be fulfilled, if applicable.

5. If a request was properly made, and the video remained available for download, I would download the requested video to a CD and provide the video a designation. This designation would be shared with the requester in any written response.

6. I am familiar with the plaintiff, Jossean Crispin (#339978), and his video preservation requests submitted at NCI from mid-2018 through the beginning of 2019.

7. Due to the nature of my previous duties, I am familiar with the DOC video surveillance system and video preservation process at NCI as it existed in 2018 and 2019.

8. NCI's video surveillance system at that time contained video data that was continuously overwritten by new video surveillance. The rate at which such video surveillance is overwritten is dependent upon the size of newly recorded video data. Generally, video surveillance that contains a large amount of movement, like housing unit surveillance, will contain more data than video surveillance that contains less movement, like an empty stairwell. Multiple facility cameras feed into the same surveillance hard drive.

9. NCI's video surveillance system will generally preserve video for a minimum of thirty (30) days before such video is overwritten automatically. There is generally no way to prematurely erase video from the system. As noted above, the availability of particular video surveillance data is determined by

the activity level of subsequent video data. Accordingly, the availability of any particular period of video data can fluctuate around the general thirty (30) day minimum period of availability.

10. DOC video surveillance footage has no audio.

11. As part of my previous duties, I was also familiar with the DOC Administrative Directives as they pertain to inmate video preservation requests.

   a. Per DOC Administrative Directive 6.9 (10) (B), a DOC inmate, among others, may request the preservation of "video evidence."

   b. The requester is advised to make his/her request as soon as possible to ensure it is received prior to fourteen (14) days from the event, incident, or claim.

   c. Such requests should include the date, time, location, description of video, and explanation for the requested video.

   d. A written response is also prepared and disseminated to the original requester of the video preservation.

12. Regarding the plaintiff's requests for video preservation, I never consulted with any of the remaining defendants in this action in reviewing and responding to the plaintiff's requests.

13. Nor would I independently investigate the nature of anything captured in the requested video footage before determining whether video preservation would be possible or appropriate. Rather, I would review a given request,

determine whether it contained the proper information and that it was not otherwise improper, and determined whether the video remained available for download. If these conditions were met, I would preserve the video consistent with the methods described above.

### I. Alleged Spoliation Incident #1 (ECF No. 95, pp. 2-3)

14. I am unfamiliar with the inmate request response alleged to be authored by Captain Lizon. ECF No. 95, pp. 28, 31. The indication in the response, however, that any request by the plaintiff to preserve video must be directed at that time to me, Captain Brian Jackson, was correct.

15. On October 11, 2018, I received two video preservation requests from the plaintiff, on both of which the plaintiff had written the date: September 19, 2018. These requests were claimed to have been made under the Freedom of Information Act (FOIA), and asked that I preserve several various dates of video data.

16. Upon receipt of these requests on October 11, 2018, I reviewed the available video data and was able to fulfil the bulk of the plaintiff's requests for preservation.

17. I determined, however, that two requested periods of video data were no longer available for preservation: 1) 3 West Dayroom on 5/9/2018 from 6:00pm to 8:00pm, and 2) 3 West Dayroom on 7/19/18 from 5:00pm to 8:30pm.

18. On October 12, 2018, I wrote to the plaintiff to inform him of the video requests I was able to fulfill and that I was unable to fulfill the above

4

referenced two requests as such video was no longer available for download.

19. I do not recall ever receiving any request by the plaintiff to preserve video data from May 9, 2018, or July 19, 2018, prior to his FOIA request received on October 11, 2018.  Nor do I have any record of having ever received any such request prior to October 11, 2018.

20. Moreover, and contrary to Administrative Directive requirements, I never received any indication from the plaintiff as to what was contained on the requested video data from May 9, 2018, or July 19, 2018.

21. At the time, I did not recall that I had previously downloaded and preserved video data from May 9, 2018, related to the plaintiff.  On June 12, 2018, at the request of the NCI warden, I preserved and reviewed video footage showing the plaintiff's cell door related to a request to investigate the plaintiff's claim that two correctional officers had harassed him.  In conjunction with this investigation, I downloaded and preserved video data from May 9, 2018, from the hours of 5:00pm to 7:00pm.  This video was logged as NCI-VP-18-0451.

22. Between June 12, 2018, and October 11, 2018, I had fulfilled numerous other video preservation requests, and had no recollection of the previous May 9, 2018 footage preservation.

23. I do not know whether this video data from May 9, 2018, captures video data that the plaintiff was seeking in his request received on October 11, 2018.

## II. Alleged Spoliation Incident #2 (ECF No. 95, p. 4)

24. I have no record nor recollection of the plaintiff's purported request to preserve video footage dated December 20, 2018.  ECF No. 95, p. 36.

25. Had I received the purported request to preserve video data, I would have reviewed it and responded.

26. Upon review of my records, however, I do see that I preserved video data related to the plaintiff from 1:00pm to 3:00pm on December 18, 2018.  This related to a request that I had received dated January 1, 2019, and appears to contain views of 1 West cell 124 and Main Corridor Medical to 3E/3W.  This video was logged as NCI-VP-19-0047.

27. I do not know whether this video data from December 18, 2018, captures video data that the plaintiff was seeking in his purported request he claims to have sent on or about December 20, 2018.

## III. Alleged Spoliation Incident #3 (ECF No. 95, p. 5)

28. I have no record nor recollection of the plaintiff's purported request to preserve video footage dated January 14, 2019.  ECF No. 95, p. 38.

29. Had I received the purported request to preserve video data, I would have reviewed it and responded.

## IV. Alleged Spoliation Incident #4 (ECF No. 95, p. 6)

30. On October 24, 2018, I received a FOIA request from the plaintiff which he dated both October 2, 2018, and September 18, 2018.

31. This request asked, among other things, that I preserve video data from September 14, 2018, through September 27, 2018, between the hours of

3:00pm and 11:00pm. It also requested that I preserve video data from September 27, 2018, through October 12, 2018, between the hours of 3:00pm and 11:00pm. The requests indicated that said video footage should show any CO that passed the designated area, but otherwise provided no basis to understand what was purportedly contained in this requested video or why such video preservation was needed, contrary to the Administrative Directives.

32. Also on October 24, 2018, I received another FOIA request from the plaintiff which he dated October 15, 2018.

33. This request asked, among other things, that I preserve video data from September 14, 2018, through September 27, 2018, between the hours of 7:00am and 3:00pm. It also requested that I preserve video data from September 27, 2018, through October 16, 2018, between the hours of 7:00am and 11:00pm. Again, other than indicating that the video should show any CO that passed by the designated area, the request otherwise provided no basis to understand what was purportedly contained in this requested video or why such video preservation was needed, contrary to the Administrative Directives.

34. In total, the plaintiff's two requests received on October 24, 2018, requested preservation of approximately 512 hours of video, at 16 hours a day, during over a one-month period.

35. While I strived to fulfill inmate request for video preservation, I retained discretion to deny such requests should the request be overly burdensome,

and improperly related to personal surveillance or not related to some identifiable incident or event.

36. Each DVD could hold approximately forty (40) hours of video data. Accordingly, the plaintiff's request would have required that I download over 500 hours of video data to approximately 13 DVDs. In my experience, this would have roughly amounted to over twenty (20) hours of work just to fulfill the plaintiff's two requests.

37. I had numerous duties at the time, including responding to other video preservation requests submitted by other inmates. Accordingly, the plaintiff's request that I spend roughly half of a regular work week on his request was overly burdensome and unreasonable.

38. Moreover, the plaintiff's indication that he wanted these hours of video surveillance simply to identify any COs that may have passed by his cell suggested to me that this video preservation request was aimed at improper personal surveillance by a DOC inmate. This was corroborated by the failure of the plaintiff to cite to any identifiable event or incident that this video allegedly showed.

39. In accordance with the above, I wrote to the plaintiff on October 24, 2018, that these particular requests for video preservation were denied on the grounds that they were overly burdensome, were generic requests for personal surveillance, and were not timely and specific in nature describing the "incident" that the plaintiff was trying to capture.

40. I have no recollection or record of receiving any "response" from the plaintiff. I have, however, in preparing this declaration, reviewed the plaintiff's purported responses that he claims to have sent and attached as exhibits to his motion for spoliation sanctions. ECF No. 95, pp. 42-43.

41. It is notable that the plaintiff's purported responses made no attempt to limit the focus of his request to bring the requested preservation of video to a more reasonable range.

42. Even if I had received the plaintiff's purported "responses," the plaintiff's request remained unreasonable, overly burdensome, and contrary to Administrative Directives requirements.

### V. Alleged Spoliation Incident #5 (ECF No. 95, pp. 7-8)

43. At some time in February 2019, I received two requests from the plaintiff, both of which he dated February 4, 2019.

44. Combined over both requests, the plaintiff requested preservation of security footage of his cell from January 21, 2019, through January 25, 2019, between the hours of 7:00am to 3:00pm. The plaintiff also requested preservations of such security footage on January 28, 2019, also between the hours of 7:00am to 3:00pm.

45. Other than writing that this was "evidence" that was somehow relevant to "prove and support" an unspecified claim in civil court, and that it captured "activity" by his cell, the plaintiff offered no explanation regarding what was allegedly contained in this video footage or an explanation regarding why specifically it needed to be preserved.

46. Again, I determined that the plaintiff's request was overly burdensome, aimed at generic personal surveillance, and not tied to any specific "incident" or "event."

47. On March 5, 2019, I wrote to the plaintiff informing him that his request was denied on the grounds stated above.

48. I have no record nor recollection of ever receiving any response to my denial.

49. I have no personal knowledge regarding the letter to ILAP that the plaintiff attached to his motion (ECF No. 95, p. 48). However, from my experience, it is unlikely that video data from the time period in January 2019 that the plaintiff requested would still be available for preservation by March, 21, 2019, the purported date of the plaintiff's letter to ILAP setting forth his explanation of the need for the video and what it allegedly contained.

50. Moreover, again, the plaintiff's "explanation" makes no attempt to narrow his request to a more specific incident or event, and therefore, again, appears aimed at improper personal surveillance by a DOC inmate.

51. Finally, I have no record nor recollection of any video being preserved related to the plaintiff that corresponded to the dates in this subject request for preservation. Such video data was not preserved, per the request denial.

I declare, pursuant to 28 U.S.C. §1746, under penalty of perjury under the laws of the United States of America that the foregoing declaration is true and accurate.

_5/21/2020_
Date

_[signature]_
Brian Jackson