Date: 7/2/2020                                    1 of 35

° Case No. 3:19-CV-00413-(VLB)

Crispin

V.                    ° Date:

Reischerl, et al

RECEIVED

Date:

JUL 1 0 2020

CCI / FOI
OFFICE

SCANNED at Cheshir
and Emailed
7/13/20 by ___ ___ page
date      initials    No.

MOTION FOR
Reconsideration
Reargument

Plaintiff Humbly Request the Court's
Reconsider the following motion's

1) Plaintiff's "motion to Compel"

2) Plaintiff's "motion for Court assistance"

3) Plaintiff's "motion for Santctions"
4) Plaintiff's "motion For Court Order"
In this motion" plaintiff will do his best" to
be Detailed and Specific" but ("the Plaintiff
Humbly Request that the Court's understand
and acknowledge") that the Plaintiff has a
("Learning Disability") that is "Interfering
with my ability to Adequately understand
Completely the Legal term's used and also effe
my ability to place Adequate' Arguments" an
express myself. Plaintiff has a: Reading
Comprehension Learning Disability and Other's.

Date: 7/2/2020                                    2 of 35

Paintiff with do his best to readdress in a clearer
way what he is asking of the courts (do to the
Plaintiff mental inability to be able too do to
his Learning Disability) and will do so with each
of the (4) motion's, in order of each Arguments
Placed on "the Ruling on Discovery Motions"
(Dxcument #104) and Ruling on "Motion For Sanctions
(Document #105)

(Responding Argument for Reconsideration on)
& Argument (1) on (Document #104)

1) As The court acknowledged Federal Rules of
Civil Procedure do not state Production of a
specified number of Document's or pages is
satisfactory.
And The "Main argument Repeatedly" used by
the Counsel's Defence is that my Discovery is too
(Broad) or it's a (fishing expadition) this is not
a adequate Reason to Refuse to comply with
Discovery.

(Responding Argument for Reconsideration on)
(Argument (2) on (Document #104)

Date: 7/2/2020                                    3 of 35

1) Plaintiff Is not an attorney nore is the Plaintiff well versed in civil law and nore is the Plaintiff aware of (ANY) Rules of Civil Procedure Other then what Small Information Provided by Other Prisoners and is extremely Limited to do So.

2) Plaintiff has express a large number of time that (Inmate Legal Aid Program) has been hindering has Legal Process, and Plaintiff has gone as fair as filing Complaint's against (I.L.A.P./Inmate Legal Aid Program) Attorney for (Bias and Discrimina and has (Repeatedly) asked the Court for appoin appointment of Counsel" because these large number of Issues to include a Learning Disabili and has Requested so in the past under the America with Disabilities Act "ADA"

3) All These Issues has Lead to the Plaintiff's making "unintentional Mistakes" in his Legal proceeding. For a Factual exsample the Plaintiff the Plaintiff Placed "John Doe's" and "Jane Doe's" because in the (1983 Packet) and (the Amended Complaint) it clearly States in the (Direction's) if you "Don't Know" a Defendant's Nam write "John Doe or Jane Doe" do to the use

Case 3:19-cv-00413-VLB   Document 107   Filed 07/13/20   Page 4 of 45

of (John Doe and Jane Doe) to Describe
("First Name & Last Name") "Mislead" the
Plaintiff to believe that he "must" have
the "Defendant's full Name" in order to add
Said Defendant's,

Fartheremore in (Section-C) it clearly
Directs a ~~to~~ Plaintiff to write Defendant's "Full-
Name" this has Openly Mislead the ~~Plaintiff~~
Plaintiff to UnDoubtedly Believe he must have
the full name and if the Plaintiff Does not he
must ~~to~~ file Said Defendant's as (John Doe's or
Jane Doe's) this misleading Print have lead to
the Plaintiff Improperly filing his (42 U.S.C. Sec
1983) and Improperly filing his Discovery and
multiple other motion's associated with the
Plaintiff's Civil Suit and the Plaintiff Civil Sui
itself. And During my filing I Identified
the other Defendant's in question by last nam
Only When Describing the outline of my suit b
filed them as "John Doe's and Jane Does". As the
Direction's Lead me to Believe must Done,
Plaintiff was not able to Properly Indicate that any
~~Does~~ Defendant's in the remaining claim do to the misled
Print, Coupled with the Inability to comprehend do to
the Plaintiff's Learning Disability of Reading Comprehen:
and the Resistence From (Inmate Legal Aid Program) to
Provide Legal assistence and research. and (Request Ca
help In this matter.)

Date: 7/2/2020                                    5 of 35

(Responding Argument for Reconsideration
On Argument #(3) on (Document #104)

1) The Defendant's Counsel is Completely wrong
in his Statement to the Court in argument.
Reason why is that any Grievance filed in a
another facility and then Forwarded to (Northern,
Corr, Inst,) "must" ("First be Processed and
Logged Within the Residing facility") (Before)
(being forward) to (Northern, Corr, Inst,), "This Log
Record is Apart" From (Northern, Corr Inst,) Since
the facility where the Plaintiff is Has a Grievance
Coodinator Whom Can Refuse to Forward any
Grievance to (Northern, Corr, Inst,) for any falure
he or She Deem's proper and in doing so Leave's
a Record of this, and this is what the Plaintiff
Seek's to assert the manipulation of the
Grievance Procedure & this will assist the Plaintiff
to do So.
(Responding Argument for Reconsideration)
On Argument #(5) on (Document #104)

1) Plaintiff did not realize what I was saying in
my Request But the Plaintiff Did mean and
Only mean his (Legal mail) and apologize's for not
be clear enough

Date: 7/2/2020                                    6 of 35

Responding Argument For Reconsideratio
On Argument #(6) On (Document #104)
And For Document #105 In-Part

(1) In this section Plaintiff did state that the
Defendant's did "Destory Video evidence" and
in this argument the ("Plaintiff Request") that the
(Court's Review) the "video surveillance" of
(NCI) -3-West Block of (5/9/2018) this Saved
video was tampered with to only save the
least Incriminating video. Why Because there
are (2- Other Stationary Camera's) that would have
Shown a Difference Story. (I ask that the viewer
keep in mind) while view the camera video that there
are (2-Other Camera's make 3 camera's) one to the
Left of the viewer" and "one to the right". The right si
Camera view would have cought the assault against
the Plaintiff.) Which is what cause (Defendant: Craig Purd
~~was~~ over because of the Incident, and the camer
Co-work, to Rush
on the Left would have Shown a Heated Verbal argum
between the Plaintiff and the (Defendant: Craig Purdy)
while the same co-work stood by and then soon after trashed
the Plaintiff cell and throw out Legal Work and Bed Sheet and
again the Camera on the Right would have Shown this
but was Intentionally Destoryed do to this fact.
See (Exhibit -A) Hand Drawn Blueprint of 3-West
Block at N.C.I with Note's

Date: 7/2/2020

(2) On (9/19/2018) the Plaintiff was again threaten and call a Rat & Snitch by (C/o Craig Purdy.) The Plaintiff Reported this Incident and Requested (all variant vision) of (Security Camera's) that follow the movement of (C/o Craig Purdy) goet going from the (Staff office/Bubble maincontral) Directly to the Plaintiff Cell and verbally abusing and threatening for almost 5-Minutes and then walking off without conducting any type of tour Showing (Intent). Instead (Captain: Jackson) only save one Video Footage that only Catch the back of (C/o Craig Pur and ANY other video's that was Incriminating Destoried. Instead the least Incriminating video was Saved Instead of All Variant video's follow; (C/o Craig Purdy) movement's following the Incident, Defendant Jackson has Now clearly Done this twice now, this is a pattern. These action's Show a Clear Pattern to Destory Evidence and ~~XXXXXXXX~~ (Brian Jackson or Defendant) has been Sacntioned in the past Scuit for these oSame action.

(3) Plaintiff wants to make Clear That He was Give under one Hour to Review Hour's upon Hour's of Video Evidence Just before Shift Change by (C.D.O.C.) and then rushed by (C/o) to finish to have Plaintiff locked up for Shift Change not allowing the Plaintiff adequate time to Analyze

Case 3:19-cv-00413-VLB Document 107 Filed 07/13/20 Page 8 of 45

Date: 7/2/2020                                    8 of 35

The video Evidence. And the Plaintiff has
made verry clear to the Defendant's Counsel
in his Letter's the need to Review these video
Evidence of which the Defendant's Counsel
has failed to Notified the Court's of these
Issues or mention it to the Court. Before
the Court's decision on all (4) of the Motion's
where ~~I~~ Humbly Request these Fact's be Reviewe
⚓that the Plaintiff Point's out, Please and thank.

(Responding Argument For Reconsideration)
(On Argument #⑧) on (Document #104) and)
(For Document #105)

① Plaintiff did State he submitted many
"Inmate Request's & Grievances" Reporting
"Sexual Harassment" which is a (P.R.E.A.) violation's
against (Defendant: Craig Purdy) but it is not what the
Plaintiff is Requesting in his Discovery.
② The Defendant's Object claiming in a
misCharacterized fashion what the Plaintiff is
Requesting the Defendant's Produce (Isn't Copies of
What The Plaintiff already has, which is not
Correct at all. What the Plaintiff is Requesting
is that the "Defendant's Produce" (any and all)
Documentation Showing that they acted on the
(P.R.E.A.) Complaint's made by the Plaintiff and

Date: 7/2/2020                                    9 of 35

of which all Defendant's Like Defendant's:
"Carlene Davis, Keith Lizon have a Legal
Obligation by Federal law" ~~~~~~~~~~~~
(to Investigate any and All (P.R.E.A.) complaint's
made,) And the fact the "Plaintiff Made multiple"
(P.R.E.A.) Complaint's against (Defendant: Craig Purdy)
"Through the "Inmate Request Form" Process and the
Inmate Grievance Process" one of these Complaint's in
Particular is a (Inmate Request) complaint of (P.R.E.A.)
this Request form was Dated (7/19/18) and outlined in
"Amended Complaint Document #9 Page 15 of 70".

(3) In Essence the Plaintiff is "not" Seeking
any (Inmate Request form's) or (Inmate Grievance
But ("Any and All") Documentation in writing
following the (Report's) on Inmate Request form's, &
Grievances, that the Defendant's ~~~~~~~ are &u
("Obligated by federal Law) to open an Investigati
On "All" (P.R.E.A.) Complaint's. The Plaintiff Seek's
the Document's that these Investigation's were to
Generate and of which the Defendant's had an
Obligation to Conduct the Moment the Plaintiff ma
his Complaint's of Sexual Harassment of which the plainti
Seek's these ~~~~~ Document's to use as Evidence against
Defendant: Craig Purdy, but also if these Document's can'
be found or Produced then it also show's "Deliberate Indiffen
by Defendant's: Carlene Davis, and Keith Lizon for falure to act, of whi

Date: 7/2/2020                               10 of 35

IS strongly Relevant to the Remaining Claim.
See (Exhibit-B)

(4) The Defendants claim my Request for them to
Produce any & All Documents related to the plaintiff's
(P.R.E.A.) that the Defendant's had a Obligation by
Federal Law to Document in Writing and Investigate
and the Defendants Claim that this Request for Production
of Documents is unRelated to the remaining claim
But in the (I.R.O.) there is mention on threats
and cell being trashed Identified as Harassment but
there is (NO) Mention or Decision Concerning
("Sexual Harassment") During the (I.R.O.) nore
are there any written acknowledgement throughout
the (I.R.O.) So the Defendants Claim's of unRelated
is moot.

(5) The Plaintiff clearly asserts (Sexual Harassment)
in his claim filed in the (Plaintiffs Amended Complaint)
Shown in (Document #9 In page #15) also Supported
by his Inmate Request Form Reporting the "Sexual-
Harassment" to (Defendant Keith Lizon) of which a
Copy will be Provided for the Courts with this motion
Showing the Defendant's were aweer of the Plaintff
being (Sexual Harassed), by (Defendant: Craig Purdy).
See (Exbibit-B)

Date: 7/2/2020                                      11 of 35
Responding Argument for Reconsideration
on Argument #9) on (Document #104)

The Plaintiff had no knowledge that he could
ReTailor a Discovery motion to specific Information
and the Defendant's Ojection did not Directly ask
the Plaintiff to do so. And nore did the (Defendant
Counsel) Knowing "the" Plaintiff's lack of Legal knowledge
Concerning federal civil Procedure "ask therefore Plaintiff
Strongly feels the Defendant's Counsel had a High Legal
Obligation upon Recieving Discovery to confer and
Communicate this Option to the Plaintiff at this the
Plaintiff would have Retailored his Dicovery adequate
and the "lack of knowledge" of (federal Civil Procedure)
Place's the Defendant's Counsel with the Legal obligation
to do so and Request's of the Court the chance
to Retailor his Complete "Discovery motion While
Conferring with the Defendant's Counsel" thereout
the retailoring of the Complete Discovery motion
So that the (Plaintiff can aid and Respect the
Confidentiality of the Defendant's) and Norrow the
Discovery to related Information of the Claim Please
and thank you.

Date: 7/2/2020

(Responding Argument for Reconsideration)
(On Argument #(10) on (Document # 104)

① The Court misunderstand's the Plaintiff when
the Plaintiff has stated thereare a series of
Incident's because there is and all of them
are Within the scope of the (I.R.O.). Some
that are out of the scope but Related to those Within the (I.R.O)
② "All names of All Inmate's are Completely
(Redacted) mean (First name's) and (Last name's)
and the Plaintiff has addressed this Issue with
the Defendant's Counsel who refuses to Provide
me these name's so I can find my witnesses
because there are some of my Witnesses I only
Know by (alias) and not by name and as the Court
stated is the Under rule 26 of Which I don't
know Know of but the Defendant's Counsel Does
of which it is The Defendant's Counsel Responsibil
to follow even if the Plaintiff wasn't aweour of
Federal Court civil rule Rule 26.
And the Plaintiff over Phone Conversation made
the Defendant's Counsel aweour thathe only knew
Some of the his Witnesses by (alias) and by (Face
only where then the Defendant's Counsel then
told the Plaintiff (Sarcastically) "You don't know
your witnesses name's at point the Plaintiff explain
the above and asked the Defendant's Counsel For

Date: 7/2/2020                    13 of 35

Help at this the Defendant's Counsel Stated
that he can't help the Plaintiff that the
Plaintiff needs to figure it out on his own or
ask (I.L.A.P.) Plaintiff at this point also made
the Defendant's Counsel aware in this Same
Phone Conversation that (I.L.A.P.) is not Providin
the Plaintiff with adequate legal assistance base
on the Levelease meaning if the Plaintiff asks
For help with Something that can be Difficult
(I.L.A.P.) avoids helping plaintiff Leading him on
For months on end with excuses to avioed openly
voilating there Contract or lying at times to the
Plaintiff all out, the Plaintiff has express these
Issues Already on a Phone Conference with
the Judge and A.A.G Jacob McChesney and
through out Multiple Motion's, and in his Request
(motion for appointment of Counsel). (the Court's Claim
that (Plaintiff did not make any atempt with try
to "Identify And Find his witnesses") by using
(I.L.A.P.)(but in Fact Plaintiff has not Just
only tried with (I.L.A.P.) who won't assist)
but has also Since made Atempts over Phone
Calls to Convince the Defendant's Counsel to hel
Who also Continues to refuse Which is why the
Plaintiff Seeked and asked the Court For he
in finding witnesses to Depose but is being
Stone Coalled.

Date: 7/2/2020                          14 of 35

③ Please See ~~~~ Attached (Exhibit D) Showing
Written Responses From (I.L.A.P.) Showing my
Prior atempt before asking the court's for
help In Finding Witnesses, See Letter
to (I.L.A.P.) (Attorney Patrick T. Dunn) Who
I wrote asking For Help to Find Witnesses and
(Depose/Get Statements). In (Att: Patrick T. Dunn)
Response he Identity's my Request for help to (Depose
Get Witness Statements) as, (Me Requesting assistance
With Witness Preparation,) ① Which (I.L.A.P.)
makes Very Clear that he (Att: Patrick T. Dunn)
"Cannot assist me" Which (Plaintiff takes as a
Denial) to Provide assistance. But The Plaintiff
Request that the Court's take Into account
#2 -Other Letter's From (I.L.A.P.) "Attorney: Jessica
N. Hansen" Dated (1/15/2019) Clearly Stating that
(I.L.A.P.) is Contracted to Provide Legal assistance
but also refusing to Provide me with a copy of there
Contract which Plaintiff asked For because he was
already having Issues recieving Legal assistance
From (I.L.A.P.) and was refused and referred to
D.O.C. Who never Responded to the Plaintiff's
Freedom of Information again Denying Plaintiff
the Right to know the scope of his ~ Rights with
the Contract. Please ~ also see (2nd Letter) From
(I.L.A.P.) Attorney: Jenna Bessette also Stating
(I.L.A.P.) is to Provide Legal assistance this Letter is

Date: 7/2/2020                                15 of 35

(Dated: 6/15/ ⬛⬛⬛⬛) Both these Letter's From
Att. Jessica N Hansen) (6/15/2019) and (Att: Jenna Bessette) 6/15/2018
Completely Contradict (Att: Patrick T. Dunn)
Refused to actively assist me See (Exhibit-D

(Responding Argument For Reconsideration
On the Denial/Dismissed Motion For Courtorder)

Plaintiff Filed Multiple (Inmate Remedies/Grievances)
that have been all out Refused to be filed or
at time's refused to be acknowledged and Intentionall
Returned not following the (Grievance Procedure)
When these Grievances have been Returned Plaintiff
has Left them Intact as Evidence to Prove
how the Defendants have manipulated the Procedure
and also used it lying to the court's Saying plaintiff
has not followed the "Grievance Procedure" these
Grievances are all within the Scope of the
(I.R.O.) #1-Grievance is on the alleged Incident of
(9/14/2018) this is Relevant to my (A.S.) Hearing
that was Refused to be filed by the administration
I have Left these this Grievance Intact as
Recieved it, if I open I break the Seal that
Prove's that it has not been altered or open in
over a year if I Break the seal it Destroy's the
Intearity of the plaintiff's Evidence and Legal argum
and is why the Plaintiff asked to be recorded by Hand Held Cam

Giving a Narrative Describing the Evidence
and how the Plaintiff Intend's to use it (In)
Proceeding the Same in the Other (#2-
Grievances) the Plaintiff intend's to use, as well,
that out-line's the Plaintiff filing Grievance's on the
abouse of the Grievances filed within The (I.R.O.)
For the Defendant's abusing the Grievance Procedure
of almost all the Grievances filed Concerning the
Plaintiff's Claim.

I have been trying to have this (Evidences saved and
Preserved) For "over a year" because of ("it's relevance)
(in my Claim) "especially" Since the Defendant's
have "claimed" That the Plaintiff has failed
to Exhaust his Grievances.
This Evidence Refutes the Defendant's allegation's

(Responding Argument For Reconsideration)
(On the "Motion" For Sanctions" on Document #105)
(Concerning Incident #1 Page: ③ of 7)

① After the assault on the Plaintiff on (5/9/2018)
the Plaintiff did Write Captian: Brian Jackson who Refu-
to answer and Return the Request Form and also prompt
the Plaintiff to Write to the (C.T. State Police) Seeking:
Who also Ignore the Plaintiff and did nothing. the
Plaintiff will State the following—

Date: 7/2/2020

The Plaintiff through lack of legal knowledge and
and a Learning Disability is having a extreme
~~Def~~ Difficult time adequately getting his arguments
~~ecto~~ across Correctly and making himself understood
and Readdresses his Request for Sanctions only
to (Defendant: Brian Jackson) For Destroying
Evidence. In this Readdress Why: Because on
(5/9/2018) Plaintiff was assault and (Defendant:
Brian Jackson) Destroyed the only 2 Video angles
"That Can Prove With out a Doubt" that (the
Plaintiff was assault) and only Left the security
Video that make the Defendant's look Innocent
See the Blue Print of 3-West Block at Northern C.I
the plaintiff has Supplied is hand written but
Give a clear understanding How and Why Video's
Were Destroyed.
     The Court-the ~~Please~~ Plaintiff Feel's must Sacntion
Defendant: Brian Jackson ~~Follow thes~~ Because
Defendant: Brian Jackson (1) is the party having Cont
over the Evidence at the Time and had a Legal
Obligation to Preserve it, at the time Because he
was Charged to Investigate the assault on the
Plaintiff (2) The moment the Plaintiff Filed his
Complaint of (5/9/2018) with the Commissioner of
Correction's order an ~~Invest~~ (Administrative-
Investigation) of which Captian Brian Jackson

Date: 7/2/2020                              18 of 35

Wrom Was charged to Investigate but also had an ("Obligation to Preserve All Video"), and (only Saved one video) and ("Destoryed") the (Two)(2)-(Other)(Stationary Cameras) "that Would Clearly Contradict Defendant Brian Jackson's" Investigation and (Incriminate) his (Co-Worker) In (Administrative Directive - 6.9)" Collection and Retention of Contraband and Physical Evidence See Page 6 of 10, Section 10(A)(1) (a-b) this Section Clearly State's (" Stationary Video Footage Shall be Collected For all Cameras in the Incident area that may have Reasonably Captured any Portion of the Incident, For a minimum of one hour Preceding and following the documented Incident.") and only saving one video out of three With out any Consent From the Commissioner of Correction's" Show's his Deliberate act to deviate From Procedure of which it State in (A.D-6.9 Section, 18) at the End of the Directive that ("Any exception's to the Procedures in this Administrative Directive shall require prior written approval From the Commissioner." All this Show's that (Defendant: Brian Jackson) "acted with a Culpable State of Mind"(3) the #2 Other Destroyed video's were in the Day room of (3-West of Northern, Co Inst, at Somers, CT.) and Both these video Covered the Incident in totality From Different angles and (one angle

Date: 7/2/2020                              19 of 35

Covered the assault) and would have Shown without
a "Doubt" that the Plaintiff was in fact "assaulted"
by (Defendant: Craig Purdy) and the (2nd Destroyed
video would Show that the Plaintiff after the assault
was in a Heated argument in the Middle of the
3-West Dayroom) at (Northern, Corr, Inst), but the
(Defendant: Brain Jackson Destroyed) these
#2 Video) of Stationary Cameras because of the
Clear Relevance to the ~~asse~~ Plaintiff and
the Incriminating Content. View the following caselaw
in Plaintiff's argument West V. Goodyear Tire &
Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).

Because the (Destroyed video) would Clearly
Contradict the ~~xxxxxxxxx~~ Defenda
Without a Doubt Show the Plaintiff was
assault and (Contradict the Investigation)
Document by (Defendant: Jackson Brian.)

And Request the Honorable Judge to For the
Following Sanction's on (Defendant: Brian Jackson)

1) Punitive damages in Relief of ($10,000s
   (Ten Thousand Dollor's) to the Plaintiff From
   Defendant Jackson.
2) I Request that a Negative Inference be
   Granted on the Incident of (5/9/2018) for hiding
   Evidence that Showed the Plaintiff being assaulted.

Date: 7/2/2020                                    20 of 35

And the Court order that any for

Jury must to a Make a (Negative -

Inference).

See Exhibits

A, B, C,

( Exhibit -A )

Hand Drawn
Blue Print
of the (3-West)
Day Room/Bbck)
Identifying Camera Angles
Destroyed

1) Hand Drawn Blue Print of (1) Page.

2) A (10) Page Administrative Directive 6.9
Collection & Retention of Contraband &
Physical Evidence
See Each Section's marked with Stars
Supporting arguments All (10) Page will be
E-filed.

Exhibit-A 22 of 35

This video would have shown Plaintiff being assaulted by (C/o Purdy)

In this video the angle the video can not catch the assault or C/o Running over after hearing The Heated argument the video only catches a the alter cation

(Destroyed)

Security Camera

Door

Phone

This Destroyed Video Would have Shown a High tense Heated argument Between C/o Purdy and Plaintiff

Security Camera

Out side view

C/o Purdy

I/m Crispin

Verbal Heated argument

Hall-Way

windowed wall

(Destroyed)

Security Camera

mesh

Door

Hall-Way

C/o Purdy Cell 103

Shower area

windowed-Wall

101 Hall-way 102

I/m Crispin

104

"Hand Drawn Blue Print" of #3-West Prison Block At "Northern Correction's" in Somers, C.T.

|  State of Connecticut<br>Department of Correction<br><br>**ADMINISTRATIVE<br>DIRECTIVE**<br><br>Approved By<br><br>*Commissioner Scott Semple* | Directive Number<br>6.9 | Effective Date<br>01/03/17 | Page 1 of 10 |
|---|---|---|---|
| | Supersedes<br>Control of Contraband and Physical Evidence,<br>Supersedes 8/15/14 | | |
| | Title<br><br>Collection and Retention of Contraband and<br>Physical Evidence | | |

1. <u>Policy</u>. The Department of Correction shall enhance safety and security by prohibit⸝
   the introduction, use and/or movement of contraband in any facility, unit, are
   vehicle, or surrounding grounds under the control of or contracted by the Departm⸝
   of Correction. Each aforementioned entity shall collect, retain and dispose ⸝
   contraband and all forms of physical evidence in accordance with this Directive.

2. <u>Reference and Authority</u>.
   A. Public Law 108-79, Prison Rape Elimination Act of 2003.
   B. 28 C.F.R. 115, Prison Rape Elimination Act National Standards.
   C. Connecticut General Statutes, Sections 18-81, 21a-262 and 53a-174a and 53a-174b
   D. Goodman v Cybulski, et al, Civil No. H-78-328.
   E. Shabazz v. Warden, No. CV 14-4006573
   F. Thomas v. Butkiewicus, 2016 WL 1718368, Civil Action No. 3:13-CV-747
   G. American Correctional Association, Standards for the Administration of Correction⸝
      Agencies, Second Edition, April 1993, Standard 2-CO-3A-01.
   H. American Correctional Association, Standards for Adult Correctional Institution⸝
      Fourth Edition, January 2003, Standards 4-4192 and 4-4282.
   I. American Correctional Association, Performance-Based Standards for Adult Loc⸝
      Detention Facilities, Fourth Edition, June 2004, Standard 4-ALDF-2C-01 and 4-ALD⸝
      2C-06.
   J. Administrative Directives 2.7, Training and Staff Development; 3.5, Correction⸝
      General Welfare Fund; 5.4, Hazardous Waste; 6.6, Reporting of Incidents; 6.⸝
      Inmate Property; 6.12 Inmate Sexual Abuse/Sexual Harassment Prevention ⸝
      Intervention; and 9.5, Code of Penal Discipline.

3. <u>Definitions and Acronyms</u>. For the purposes stated herein, the following definit⸝
   and acronyms apply:

   A. <u>Chain of Custody</u>.  A process of chronological documentation, showing the sei⸝
      custody, retention, transfer, and disposition of contraband and/or phy⸝
      evidence; also refers to a form used for documenting this process.
   B. <u>Collection</u>.  To acquire, bring together, gather, or to recover contr⸝
      something.
   C. <u>Contraband</u>. An item that falls under the following criteria:
      1. Not authorized to be in any facility, unit, area, vehicle, or surro⸝
         grounds under the control of or contracted by the Department of Corr⸝
         or in an inmate's possession;
      2. that is authorized, but used in an unauthorized or prohibited manner⸝
      3. that is authorized, but altered; or,
      4. for which ownership cannot be established.
   D. <u>Excessive Property</u>. Authorized property that is in excess of limits permi⸝
      Administrative Directive 6.10, Inmate Property.
   E. <u>Physical Evidence</u>. Anything including, but not limited to, <u>a written</u>⸝
      videotape/disc, digital image, photograph, audio recording, <u>any tangible</u>⸝
      or substance(s) and biological, or forensic material that may a⸝
      substantiate or <u>refute any criminal,</u> <u>administrative</u> charge(s) or allega⸝
      <u>include potential litigation.</u>
   F. <u>PREA</u>. Prison Rape Elimination Act.
   G. <u>Retention</u>. The purposeful continued possession, use or control of somet⸝

| Directive Number | Effective Date | Page 2 of 10 |
|---|---|---|
| 6.9 | 01/03/17 | |
| Title | | |
| Collection and Retention of Contraband and Physical Evidence | | |

H. **Spoliation**. Destruction of evidence which there is a legal obligation to preserve; significant alteration of evidence or failure to preserve property for use as evidence in pending or reasonably foreseeable litigation. This includes allowing evidence to be overwritten or discarded in addition to the affirmative destruction of it. It is also a cause of action under state law for money damages for destruction of evidence. Spoliation can also be grounds for a party to obtain sanctions from the court such as a fine or an adverse inference instruction to a jury.

4 **Contraband/Physical Evidence Classification**. Confiscated contraband/physical evidence shall be classified in one (1) of the following categories:

A. Weapon;
B. Drug/Drug Paraphernalia;
C. Alcohol - commercial or homemade;
D. Appliance (e.g., television, radio, stereo, recorder, etc.);
E. Currency (money or other commodity of exchange);
F. Clothing;
G. Miscellaneous Property; Staff Contraband
H. Cellular/Digital Device;
I. Written Record, video tape/disc, digital image, photograph or audio recording;
J. Other (with description).

5. **Inmate Notification of Seizure of Contraband or Excessive Property**. When contraband or excessive property is confiscated the involved inmate shall be notified in accordance with Administrative Directive 6.10, Inmate Property, when applicable. When confiscation of excessive property results in a formal charge consistent with Administrative Directive 9.5, Code of Penal Discipline, the disciplinary report shall serve as the receipt.

6. **Contraband**. Contraband shall be retained as follows:

A. **Contraband Storage**. Contraband shall be retained in a secure area with access limited to those individuals designated by the Unit Administrator.

B. **Tagging**. Upon confiscation, a contraband item shall be tagged and classified, in accordance with Section 4 of this Directive, utilizing CN 6901, Contraband/Physical Evidence Tag and Chain of Custody.

C. **Logs**. A hardbound contraband log shall be maintained to include:
   1. description of confiscated contraband;
   2. any identifiable marking, including brand name, serial number and/or model number;
   3. date and time of confiscation;
   4. location where found;
   5. person possessing contraband;
   6. staff discovering contraband;
   7. a record of any photos of contraband;
   8. assigned number in accordance with this subsection;
   9. disposition of contraband; and,
   10. any other relevant data.

Each item of contraband shall be identified by a unit tracking number which shall be prefixed by the facility/unit's initials, followed by a dash (-), the letter "C", followed by a dash (-), the last two numbers of the calendar year, followed by a dash (-) and sequential and uninterrupted numbers for logged contraband items.

| Directive Number 6.9 | Effective Date 01/03/17 | Page 3 of 10 |
|---|---|---|
| Title | Collection and Retention of Contraband and Physical Evidence | |

D. <u>Documentation of Discovery</u>. Any employee who discovers contraband and/or physical evidence shall complete CN 6601, Incident Report in accordance with Administrative Directive 6.6, Reporting of Incidents.

E. Chain of Custody. Any time contraband and/or physical evidence is retained, handled, inventoried, removed or returned from a storage area, the activity shall be noted on CN 6901, Contraband/Physical Evidence Tag and Chain of Custody form and in the contraband log to include the following data:
   1. employee's printed name and signature;
   2. date and time;
   3. reason; and,
   4. any other relevant information.

7. Physical Evidence. Physical evidence for any potential administrative or criminal proceeding shall be collected and retained to prevent spoilation. Physical evidence shall be categorized as either criminal or administrative in nature and shall be handled as follows:

A. <u>Protection of Crime Scene</u>. In any case in which a crime is suspected, the discovering staff member shall notify a supervisor without leaving the scene, if possible, and secure the suspected crime scene. Care shall be taken not to disturb the suspected crime scene or any physical evidence unless it is necessary to eliminate any further or immediate threat to the safety and security of staff, inmates or facility/unit and/or the possible disappearance (unauthorized movement and/or confiscation) of anything which may be considered evidence. Photos and/or videos shall be collected and retained of the suspected crime scene and any suspected physical evidence. Only authorized personnel shall be allowed to enter the area. The Connecticut State Police shall be promptly notified. The Connecticut State Police shall have authority over any criminal investigation and shall be responsible for securing criminal physical evidence upon responding to the facility/unit.

A-D 6.9

7. B. Handling Criminal and/or Administrative Evidence. When it becomes necessary for a Department employee to handle potential criminal and/or administrative physical evidence, it shall be handled only as required and only by those with a need or responsibility to handle it. The following safeguards shall be adhered to:
   1. Latex or rubber gloves shall be used to the extent possible, each specific item of evidence shall be placed in a separate bag, envelope or container so as to avoid disturbing or compromising the integrity of the evidence. Evidence containing fingerprints or body fluids shall be placed in a paper bag for processing;
   2. The storage container shall be tagged utilizing CN 6901, Contraband/Physical Evidence Tag and Chain of Custody; and,
   3. Criminal physical evidence items when removed from the scene shall be placed directly in the criminal physical evidence storage area or turned over to the Connecticut State Police. The chain of custody shall be strictly enforced and documented.

A-D 6.9

7. C. Handling Video Evidence. When it becomes necessary for a Department employee to handle potential video evidence, it shall be handled only as required and only by those with a need or responsibility to handle it. The following safeguards shall be adhered to:
   1. The video tape/disc shall be logged in a video and photographic evidence log as noted in Section 7(G) of this directive.
   2. Each specific video tape/disc of evidence shall be collected in accordance with Section 10 of this directive. It shall then be placed in a separate

| Directive Number 6.9 | Effective Date 01/03/17 | Page 4 of 10 |
|---|---|---|

| Title |
|---|
| Collection and Retention of Contraband and Physical Evidence |

case, sleeve, envelope or container so as to avoid disturbing or compromising the integrity of the video evidence.
3. The case, sleeve, envelope or container shall be tagged utilizing CN 6901, Contraband/Physical Evidence Tag and Chain of Custody; video evidence shall be placed directly in the video evidence storage area. The chain of custody shall be strictly enforced and documented.

D. Handling of photographic evidence. When it becomes necessary for a Department employee to obtain photographic evidence, it shall be handled only as required and only by as few persons as necessary.
   1. Only photos with pertinent content shall be included with the incident report.
   2. All photographs shall be downloaded to a disc in accordance with the procedure listed in Section (7) (C) (1-3) of this Directive.
   3. Photographs may be downloaded to discs that contain hand-held video footage of the incident.

E. Retention.   Retention of any potential criminal ; administrative; video or photographic evidence shall be as follows:
   1. Criminal Physical Evidence. Potential criminal physical evidence, not immediately released to the Connecticut State Police, shall be retained along with the criminal physical evidence log in a secure area designated by the Unit Administrator. The criminal physical evidence storage area shall be separate from the contraband storage area, and shall be accessed only by the person(s) designated by the Unit Administrator.
   2. Administrative Evidence. Administrative evidence shall be retained in an area designated by the Unit Administrator. Administrative evidence shall be released to the appropriate authority (e.g., Security Division, Affirmative Action Unit, etc.). Only personnel designated by the Unit Administrator or higher authority shall have access to the administrative evidence storage area.
   3. Video Evidence.   Video evidence shall be retained in an area designated by the Unit Administrator. All video evidence shall be retained along with the original CN6901 and a Video and Photographic Evidence Log. Only personnel designated by the Unit Administrator or higher authority shall have access to the video storage area.
   4. Photographic Evidence. All photographic evidence shall be retained in an area designated by the Unit Administrator. All photographic evidence shall be retained along with a Video and Photographic Evidence Log. Copies of all photographs shall be printed on with pertinent a CN6904, Photographic Evidence form and be attached to the incident report.

F. Criminal Physical Evidence Log. A permanent, hardbound, criminal physical evidence log for potential criminal evidence shall be maintained inside the evidence storage locker. In addition to logging the chain of custody information required in Section 6(E) of this Directive, the following information regarding the criminal physical evidence shall be included in the log:
   1. a description of the criminal physical evidence;
   2. date and time discovered or when classified as criminal physical evidence;
   3. individual discovering criminal physical evidence;
   4. individual placing criminal physical evidence in criminal physical evidence locker;
   5. date and time placed in criminal physical evidence locker; and,
   6. date and time, by whom and reason for removal from criminal physical evidence locker.

Each item of potential criminal physical evidence shall be identified by a unique number which shall be prefixed by the facility/unit's initials, followed by a dash (-

| Directive Number | Effective Date | Page 5 of 10 |
|---|---|---|
| 6.9 | 01/03/17 | |
| **Title** | | |
| Collection and Retention of Contraband and Physical Evidence | | |

), the letters "CPE", followed by a dash (-),  the last two numbers of the calendar year, followed by a dash (-) and sequential and uninterrupted numbers for logged criminal physical evidence.

A-P 60

7. G. Video and Photographic Evidence Log. A permanent, hardbound, video and Photographic Evidence Log shall be maintained for videos and photographs. In addition to logging the chain of custody information required in Section 6(E) of this Directive, the following information regarding the video and photographic evidence shall be included in the log:

 1. video and/or photograph tracking number
 2. date and time of incident;
 3. camera operator (video and/or photographs);
 4. supervisor;
 5. incident description,
 6. incident report number (if applicable);
 7. number of photographs (if applicable);
 8. date and time, by whom and reason for removal from video and photographic evidence locker.

Each video tape/disc and/or photographic evidence shall be identified by a unique unit tracking number which shall be prefixed by the facility/unit's initials, followed by a dash (-), the letter "VP", followed by a dash (-), the last two numbers of the calendar year, followed by a dash (-) and sequential and uninterrupted numbers for logged video and photographic evidence.

H. Chain of Custody. Any time potential criminal physical evidence is  retained, handled, inventoried, removed or returned from a storage area, the activity shall be noted on the CN 6901, Contraband/Physical Evidence Tag and Chain of Custody Form and in the physical evidence log to include the following data:

 1. employee's name;
 2. date and time;
 3. reason; and,
 4. any other relevant information.

Prior to transfer of evidence to the Connecticut State Police and/or other outside agency, the original CN 6901, Contraband/Physical Evidence Tag and Chain of Custody Form shall be signed by the receiving official indicating receipt of the evidence. A copy of the CN 6901, Contraband/Physical Evidence Tag and Chain of Custody Form shall be given to the receiving official and the original CN 6901 shall be added to the appropriate incident report package.

8. Employee Electronic Device. Upon determination that a staff member has entered a facility with an unauthorized electronic device, the facility supervisor will note whether the employee was observed using the electronic device, and will conduct the following:

 A. If the employee was not observed using the electronic device, the employee will be instructed to immediately remove the electronic device from the facility and have it placed in their automobile. An incident report will be generated.
 B. If the employee was observed using the electronic device, the item will be confiscated, an incident report generated, the Unit Administrator or Duty Officer contacted.
 C. Confiscated electronic devices shall be photographed, tagged with a CN 6901 Form and secured in a Faraday bag for forwarding to the External Security Unit as evidence in accordance with this Directive.

9. Video Evidence. Video Evidence shall be treated and handled in accordance with Section 7 of this Directive. Each video tape/disc shall have a separate CN 6901, Contraband/Physical Evidence Tag and Chain of Custody Form. A manager/supervisor not

| Directive Number 6.9 | Effective Date 01/03/17 | Page 6 of 10 |
|---|---|---|
| Title Collection and Retention of Contraband and Physical Evidence | | |

directly involved in the incident shall review the video tape/disc and complete CN 6902, Supervisor Video Recording Review Form in accordance with Section 10(A) and 10(B) of this directive.

10. Collection and Review of Video and Photographic Evidence. Video and photographic evidence will be collected and reviewed for possible retention in the following circumstances:

10.

A-D 6.9

A. Documented Incidents. All incidents  that are defined in Administrative Directive 6.6-Reporting of Incidents, Sections (5) (6) (7).

1. Stationary and hand-held video footage shall be collected as evidence if the video is taken or recorded during a documented incident and/or is noted as evidence in an incident report package.



a) Stationary video footage shall be collected for all cameras in the incident area that may have reasonably captured any portion of the incident, for a minimum of one hour preceding and following the documented incident.

b) Additional stationary camera and hand-held video footage preceding, during, or following the documented incident shall be collected as evidence if it is determined, by the supervisor documenting the incident or those designated by the Unit Administrator, to be deemed relevant to or provides additional information about the documented incident. This shall include any discrepancies (i.e.: obstructions or breaks in video coverage, event in focus) observed while viewing the hand-held video recording or situations which may necessitate additional video.

2. The scope of collection as defined in Section 10 (A) (1) (a-b) of this directive shall be  determined by the supervisor documenting the incident or those designated by the Unit Administrator.

3. The scope of collection as defined in Section 10 (A)(1)(a-b) of this directive may be broadened by the Unit Administrator or his/her designee in light of the following factors:

    a. Issues and/or concerns presented in a written request by an attorney, union representative, staff member, inmate, visitor, etc., about the incident,

    b. the actual location of the incident, and the locations of events preceding and following the incident,

    c. the totality of the circumstances surrounding the incident, and

    d. the responsibility for the collection of the additional video evidence shall be determined by the Unit Administrator or his/her designee.

4. Review of the collected video as defined in Section 10(A)(1)(a-b) and will be conducted as follows:

    a. A manager or supervisor not directly involved in the incident shall conduct a supervisory review of all hand-held video footage/evidence shall be conducted and documented on a CN6902-Supervisor Video Recording Review form.

    b. A manager or supervisor not directly involved in the incident shall conduct a supervisory review of all stationary video footage/evidence that best captures the incident shall be conducted and documented on a CN6902-Supervisor Video Recording Review form.

    c. Supervisory review of additional video footage/evidence shall be ordered by the Unit Administrator or his/her designee.

    d. Best efforts shall be made to conduct supervisory reviews within 15 days of the incident.

| Directive Number 6.9 | Effective Date 01/03/17 | Page 7 of 10 |
|---|---|---|

| Title |
|---|
| Collection and Retention of Contraband and Physical Evidence |



B. <u>Preservation requests</u>. Upon any written request by an attorney, union representative, staff member, inmate, visitor, etc., the facility shall collect and retain all original video evidence inclusive to the request. The request shall be acted upon in a timely manner.

1. The requestor shall make his/her request as soon as possible to ensure the request is received by the Unit Administrator or designee prior to 14 days from the event, incident or claim.

2. The request shall include the date, time, location, description of video and explanation for the requested video.

3. The video evidence shall be collected by those staff designated by the Unit Administrator, or designee.

4. The video evidence shall be retained specific to the timelines requested of the event/incident to include any and all video evidence pertinent to the request.

5. A supervisory review of the requested video evidence shall be conducted at the discretion of the Unit Administrator or his/her designee.

6. Upon supervisory review of the video evidence if it is observed that the event/incident is outside the timeline documented in the request then additional video evidence shall be retained.

7. Upon supervisory review of the video evidence the Unit Administrator or his/her designee shall be notified of any information pertinent to the request or any other reportable event observed during the review. Any further action deemed necessary shall be at the discretion of the Unit Administrator.

8. A CN6902-Supervisor Video Recording Review form shall be completed to document the review.

9. A written response shall be prepared and disseminated to the originator of the request.

10. Copies of the original request, the written response to the requestor, the CN6901-Contraband/Physical Evidence Tag and Chain of Custody and CN6902-Supervisor Video Recording Review form for video evidence shall be retained in a location designated by the Unit Administrator.

C. <u>Disciplinary Proceedings</u>. During defense preparation if the accused inmate, or witness/witnesses, requests video evidence pertaining to the alleged offense or disciplinary process, the facility shall collect, review and retain all original video evidence pertinent to the request if such video is still available.

1. The accused inmate, or witness/witnesses, may request video evidence during the pre-hearing investigation or during the formal disciplinary hearing with the Disciplinary Investigator or Advocate.

2. The Disciplinary Investigator or Advocate shall be responsible to collect, review and retain the pertinent video relevant to the alleged offense. Video requests made during the formal disciplinary hearing shall be considered for use in the hearing at the discretion of the Disciplinary Hearing Officer. Regardless of the use of the video in the formal disciplinary hearing, the Disciplinary Hearing Officer shall instruct the facility Disciplinary Investigators to collect and retain such video for any future administrative proceedings or potential ligation.

3. The review shall be documented in synopsis form by the Disciplinary Investigator on the CN9505/2-Disciplinary Investigation Report facts section. It shall be noted by the Advocate on the CN9508/2-Advocate Report evidence section, then in synopsis form on CN9506, Disciplinary Supplemental Information.

4. A CN6901-Contraband/Physical Evidence Tag and Chain of Custody along with a copy of any one of the respective forms noted in part 3 above shall be attached to the videotape/disc.

| Directive Number 6.9 | Effective Date 01/03/17 | Page 8 of 10 |
|---|---|---|
| Title | Collection and Retention of Contraband and Physical Evidence | |

The procedure for collection of surveillance video evidence shall be in accordance with each facility and/or unit's specific video surveillance system.

D. <u>Collection of photographic evidence</u>. The collection of photographic evidence, if applicable, shall be inclusive to any documented incident as described in Administrative Directive 6.6-Reporting of Incidents, Sections (5) (6) (7).
1. All photographs shall be taken in accordance with facility and/or unit procedures.
2. All photographs taken, regardless of their content, shall be included on a disc for retention. (e.g.: If 10 photographs are taken then all 10 photographs shall be included.)
3. Only photos with pertinent content shall be inserted on a CN6904 Photographic Evidence Form, printed and be included with the incident report.
4. Photographs shall be numbered in numerical order and include the total amount photographs taken. (e.g.: Photo #1 of #10)

11. <u>Retention and Copying of Video and Photographic Evidence</u>. The copying of video and photographic evidence shall conducted be as follows:

A. <u>Facility Investigations</u>. Each facility shall be responsible for the retention and copying of video and photographic evidence related to facility-level investigations.

B. <u>Security Division Investigations</u>. The facility shall retain for retrieval, all original video and photographic evidence for Security Division Administrative Investigations (non-criminal). The Security Division shall assume the sole responsibility of copying and distributing video and photographic evidence associated with Security Division Investigations.

C. <u>Criminal Investigations</u>. The facility shall be responsible for providing the original video and photographic evidence to the Connecticut State Police and maintaining one copy for the Security Division of all incidents under criminal investigation by the Connecticut State Police. The copy shall be retained for retrieval by the Security Division.

D. <u>PREA Investigations</u>. The facility shall retain for retrieval, all original video and photographic evidence for PREA Administrative Investigations (non-criminal). The PREA Investigation Unit shall assume the sole responsibility of copying and distributing video and photographic evidence associated with PREA Investigations.

E. <u>Documented Incidents</u>. The facility shall retain for retrieval, all original video and photographic evidence inclusive and/or associated with any incident as described in Section 10(A) of this directive for a period of 10 years from date of recording, or until any pending legal action has been resolved, whichever is later.

F. <u>Preservation requests</u>. The facility shall retain for retrieval, all original video evidence inclusive and/or associated with any preservation request as described in Section 10(B) of this directive for a period of 10 years from date of recording, or until any pending legal action has been resolved, whichever is later.

G. <u>Disciplinary Proceedings</u>. The facility shall retain for retrieval, all original video evidence pertinent to and/or associated with any disciplinary proceeding, when requested, as described in Section 10(C) of this directive for a period of 10 years from date of recording, or until any pending legal action has been resolved, whichever is later.

| Directive Number | Effective Date | Page 9 of 10 |
|---|---|---|
| 6.9 | 01/03/17 | |

| Title |
|---|
| Collection and Retention of Contraband and Physical Evidence |

Any video or photographic evidence that is copied and/or distributed to the above listed units/agencies, shall be reflected on the original CN6901. A copy of this updated CN 6901 will be attached to the copy of the evidence and attached to the associated incident report. The original CN6901 shall remain with the evidence while it is still with the initiating facility.

12. <u>Handling of Evidence Obtained through the Facility Intelligence Unit</u>.
Evidence obtained through the Facility Intelligence Unit shall be inventoried and retained for retrieval in the facility telephone monitoring room evidence storage area. Evidence accountability shall be documented and maintained utilizing CN 6903, Intelligence Unit Physical Evidence Tag and Chain of Custody. Access to the facility telephone monitoring room shall be by authorized personnel only.

13. <u>Contraband/Criminal Physical Evidence Inventory</u>.
Contraband and criminal physical evidence shall be inventoried quarterly to ensure proper accountability and consistency with the appropriate log.

14. <u>Disposal of Contraband and Criminal Physical Evidence</u>. When all administrative and/or applicable criminal proceedings requiring the contraband and/or criminal physical evidence have been completed, the Unit Administrator shall authorize the disposal of contraband and/or criminal physical evidence in accordance with the following:

   A. <u>Weapons</u>. Confiscated firearms shall be released to the Connecticut State Police or the Department's Director of Security for transfer to the Department of Public Safety. Such removal shall be documented on CN 6901, Contraband/Physical Evidence Tag and Chain of Custody and the Unit Administrator shall be properly notified. Sharp weapons shall be disposed by use of a "sharps container." The Unit Administrator or designee shall dispose of weapons in a safe and secure manner. In every case, proper documentation shall be ensured in accordance with Section 7(E) of this Directive and annotated on CN 6901, Contraband/Physical Evidence Tag and Chain of Custody.

   B. <u>Drugs</u>. Confiscated drugs shall be released to the Connecticut State Police or a member of the Department's Security Division for transfer to the Department of Consumer Protection. The Security Division shall remove all retained confiscated drugs from each facility/unit semi-annually or as needed. Each unit shall be notified of removal dates and such removal shall be documented on CN 6901, Contraband/Physical Evidence Tag and Chain of Custody.

   C. <u>Alcohol - Commercial or Home Made</u>. Contraband alcohol shall be disposed of at the discretion of the Unit Administrator.

   D. <u>Hazardous or Infectious Materials</u>. All hazardous materials shall be disposed in accordance with Administrative Directive 5.4, Hazardous Waste.

   E. <u>Appliances</u>. Confiscated appliances shall be disposed of in accordance with Administrative Directive 6.10, Inmate Property.

   F. <u>Money</u>. Unauthorized monies shall be confiscated and deposited in the Correctional General Welfare Fund via the Fiscal Services Unit in accordance with Administrative Directives 3.5, Correctional General Welfare Fund and 6.10, Inmate Property. All unauthorized monies shall be placed in a see-through evidence bag. The following procedure shall be followed:
   1. The facility shall complete Attachment A, CO-99, Official Receipt. The white copy of the receipt shall be retained at the facility with the original CN 6601, Incident Report (contaminated funds shall be indicated in the body of the report).

| Directive Number | Effective Date | Page 10 of 10 |
|---|---|---|
| 6.9 | 01/03/17 | |
| Title | | |
| Collection and Retention of Contraband and Physical Evidence | | |

2. The yellow copy of Attachment A, CO-99, Official Receipt, and copy of CN 6901, Contraband/Physical Evidence Tag and Chain of Custody and the funds shall be placed in a see-through evidence bag and labeled "Contraband Funds." Funds shall be hand carried to the Fiscal Services Unit, Accounting Unit where a new Attachment A, CO-99, Official Receipt shall be made out.

3. A copy of the new Attachment A, CO-99, Official Receipt shall be given to the courier as a receipt to be returned to the originating facility where it shall be attached to the original CN 6601, Incident Report.

G. <u>Clothing</u>. Disposal of contraband clothing shall be in accordance with Administrative Directive 6.10, Inmate Property.

H. <u>Other Items</u>. Other items that cannot be returned to the rightful owner shall be disposed of or destroyed in accordance with Administrative Directive 6.10, Inmate Property.

I. <u>Excessive Property</u>. Excessive property shall be processed in accordance with Administrative Directive 6.10, Inmate Property.

15. <u>Emergency Circumstances</u>. A staff member may deviate from the requirements of this Directive in order to preserve the safety and security of the facility/unit.

16. <u>Training</u>. Staff training on the information and procedures contained within this directive shall be in accordance with Administrative Directive 2.7, Training and Staff Development.

17. <u>Forms and Attachments</u>. The following forms and attachments are applicable to this Administrative Directive and shall be utilized for their intended function:

A. CN 6901, Contraband/Physical Evidence Tag and Chain of Custody;
B. CN 6902, Supervisor Video Recording Review;
C. CN 6903, Intelligence Unit Physical Evidence Tag and Chain of Custody;
D. CN 6904, Photographic Evidence
E. Attachment A, CO-99, Official Receipt.

18. <u>Exceptions</u>. Any exceptions to the procedures in this Administrative Directive shall require prior written approval from the Commissioner.

# Exhibit - B

This Exhibit Consist of the
Following Documents.

1) Inmate Request Form Dated (7/19/2018)
   Reporting Sexual Harassment

2) A Letter that is Double Sided with
   Writing and is to be E-filed as so
   Showing Both Sides.

3) A (#4) Page Sexual Abuse/Sexual Harassment
   Prevention For Inmate Handout. Which is
   An "Attachment" (E) to (Directive - 6.12)

See Each Section the Plaintiff marked
Off with a Star.

Exhibit-D

**Inmate Request Form**
Connecticut Department of Correction

H R

CN 9601
REV. 1/31/09

Inmate name: Jossean CrisPin     Inmate number: 339978

Facility/Unit: NCI / 3-West     Cell #: 103     Date: 7-19-2018

Submitted to: (1) Active Unit Manager: CaPtian Lizon   Recived 8/8/18

Request: I am Reporting an on going "Issiue" that "continues" with (C/o Pardy)
Incident Date: (7-19-18) (2nd) Shift Between (5:00 Pm and 8:30 Pm) on
3-West (Save Camrea/Video security Recording of saiddate and
Time above) On this Incident on Shake Down (C/o Pardy) Stepped up to
my cell Door bluntly telling he's going to Trash my cell while also calling
a child molester showing that this a (Hate crime) because his action's are
geared from my charge's soon after this (C/o Pardy) (Sexual Harassed)
me by saying ("is that your Cum Rag Huh, is it your Jerk off Rag")
openly infort of everyone (While patting me down) making me "extremly
uncomfortble" as I did my best to ignore him, after retuning from
*continue on back if necessary*

~~the shower~~ the shower I found my cell (Trashed and Legal work
missing (Toilet Paper Roll's thrown in the Toilet") this is not
the first time this (officer has assaulted me after threatening me and
then had my cell trashed and my Legal work thrown out as well) and
(C.D.O.C.) keep's Brushing this under Rug, these Hate Crime &
Sexual Harassment, abuse need to Stop)
*continue on back if necessary*

Acted on by (print name):     Title:

Action taken and/or response:

I addressed this issue with the 2nd Shift commander and
C.S Davis both said (Officer has been spoken too.)

If you need video write to Capt Jackson.
8/14/18 Capt Li

*continue on back if necessary*

Staff signature:     Date:

This I/m Request form
IS Plaintiff's Attempt to Report
PREA

Exhibit-B

Double Sided

NOTE: This Double Sided
writing on back too of this
Document & is Double Sided

25 of 35

Date: (7-19-20 18)

To: 3-West Active Unit manager: Captian Lison

~~Too Whom do Be a May Regard~~

Northern, Corr, Inst... PO-Box 665
278-Bilton, Rd. Somers, CT. 06071

From: Jossean Crispin #339978
Northern, Corr, Inst, PO-Box 665
278-Bilton, Rd. Somers, C.T. 06071

**Requested under F.O.I.A** Not a) Save security video of 5/9/18 Between the time of 6:00 Pm 8:00 p.
and save security video of 7/19/18 Both incident happened by my cell 103/3-we

Note): Inclosed With this Letter is a (CN-9601-Request form)
addressing the Incident on (7-19-18) on (2nd Shift) that has
been "an on going" (Serious Problem) "for month's" my
"last Atempt" to "Report the Incident" where (C/o Purdy)
"Assaulted me") and then had his (CO-Worker-C/o Titus)
Trash my cell and this all was (ignored), this Incident happened
On (5-9-18) on (2nd Shift)... (This Recent Incident) I was
"Sexualy Harassed" and had my ("Cell Trashed") and (Important
Legal thrown away "again"), something seriously needs
to be done about (C/o Purdy's) abusive, "Threatening",
"assaultive", and "Sexualy Harassing Behavior"...
because (I Fear for my life and Safety and property)
**PREA Report** there's NO Reason Why this has Continued for Month's
After I've Notified (C.D.O.C.) at every Level

Heather lehway Thibodeau                    7-25-18

Notary Public Sign:                          Date:

**NORTHERN C.I.**
**NOTARY PUBLIC**
MY COMMISSION EXPIRES 4-30-2020

Victim/Prisoner sign: Jossean Crispin     Date: 7/25/18
Filed page's: 91 of

 

Page 1 of 4 (Exhibit B)

# Sexual Abuse/Sexual Harassment Prevention for Inmate Handout.

Due to your assigned restrictive status you are being provided this handout which contains information regarding the Prison Rape Elimination Act and your personal safety.



The Prison Rape Elimination Act (PREA) is a federal law that establishes requirements for all prisons, jails and detention centers to prevent, detect and deter acts of sexual abuse and sexual harassment and institutes protocols for intervention and follow-up care in the event of such acts occurring.

The Connecticut Department of Correction will comply with the mandates of the Prison Rape Elimination Act.

As an Agency, the Connecticut Department of Correction maintains a zero tolerance policy toward any act of sexual abuse or sexual harassment. Regardless of the degree, sexual abuse is a serious matter whether it occurs outside or inside of a correctional facility. These acts may cause severe physical and psychological harm and can damage an inmate's chances for a successful reintegration into law-abiding society.

You are encouraged to immediately report any threat of or occurrence of sexual abuse or sexual harassment to correctional staff so that any potential victim may be protected and the assailant can be prosecuted to the fullest extent of the law.

## Definitions



**Sexual Abuse:** Sexual abuse shall be defined as the following conduct between persons regardless of gender.

There are two categories of sexual abuse:
1) Sexual abuse of an inmate by another inmate; and
2) Sexual abuse of an inmate by a staff member, contractor, vendor or volunteer.

**Sexual abuse of an inmate by another inmate includes any of the following acts, if the victim does not consent, is coerced into such act by overt or implied threats of violence, or is unable to consent or refuse:**
(1) Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;
(2) Contact between the mouth and the penis, vulva, or anus;
(3) Penetration of the anal or genital opening of another person, however slight, by a hand, finger, object, or other instrument; and
(4) Any other intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or the buttocks of another person, excluding contact incidental to a physical altercation.

**Sexual abuse of an inmate by a staff member, vendor, contractor, or volunteer includes any of the following acts, with or without consent of the inmate:**
(1) Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;
(2) Contact between the mouth and the penis, vulva, or anus;
(3) Contact between the mouth and any body part where the staff member, contractor, vendor or volunteer has the intent to abuse, arouse, or gratify sexual desire;
(4) Penetration of the anal or genital opening, however slight, by a hand, finger, object, or other instrument, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;
(5) Any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;
(6) Any attempt, threat, or request by a staff member, contractor, vendor or volunteer to engage in the activities described in paragraphs 1- 5 of this section;
(7) Any display by a staff member, contractor, vendor or volunteer of his or her uncovered genitalia, buttocks, or breast in the presence of an inmate, and
(8) Voyeurism by a staff member, contractor, vendor or volunteer.



**Sexual Harassment:** Sexual harassment shall be defined as the following conduct between persons regardless of gender.
Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one inmate directed toward another; and repeated verbal comments or gestures of a sexual nature to an inmate, by a staff member, contractor, vendor or volunteer, including demeaning



*UD 6.12 Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention (Attachment E)*

Page: 2 of 4

references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.

Consensual sexual contact or intimate activity including, but not limited to, hand holding, hugging, kissing or fondling between inmates is strictly prohibited and may lead to disciplinary action against the participant(s).

## Prevention

The Connecticut Department of Correction has established policies and procedures to help prevent sexual abuse within its facilities. These policies include screening of inmates upon admission for risk of victimization or abusiveness, proper classification and housing of inmates, inmate education during orientation and staff training to recognize warning signs of possible sexual abuse.

As an inmate, you can take steps to reduce the possibility of being the victim of sexual abuse. Some of those steps are:

- Carry yourself in a confident manner. Do not permit your emotions (fear/anxiety) to be obvious to others.
- Trust your instincts. If you sense a situation is dangerous, it probably is.
- Do not accept gifts or favors from others. Most gifts come with strings attached.
- Do not accept an offer from another inmate to be your protector.
- Be alert! Contraband substances such as drugs and alcohol will weaken your ability to stay alert and make good judgments.
- Be direct and firm if others ask you to do something you don't want to do.
- Choose your associates wisely. Look for people involved in positive groups and activities.
- Promptly report any concerns regarding sexual abuse or sexual harassment to a staff member.

## Reporting

Individuals that sexually abuse and/or harass inmates can only be disciplined or prosecuted if the incident is reported. If you become a victim of sexual abuse or sexual harassment, you should report it immediately to any facility staff. The employee to whom you report any such incident will take immediate action to ensure your safety and will document the report in writing. Appropriate notifications through the facility chain of command and, if applicable, law enforcement agency will be completed. You will be referred for a medical exam, clinical assessment and treatment. You do not have to name the assailant in order to receive medical treatment. All medical and mental health treatment resulting from a report of sexual abuse or sexual harassment is provided free of charge to the victim.

Even though you may want to clean up after the incident, *it is important that you see medical staff before you shower, wash, brush your teeth, drink, change clothing, or use the bathroom.* Medical staff will examine you for injuries, which may or may not be obvious to you. A medical professional may perform a forensic medical exam to collect evidence if it is deemed appropriate to do so.

You have the right to refuse the examination. However, if you have been the victim of sexual abuse, it is critical to collect as much evidence as possible.

Medical information gathered during this exam and any subsequent treatment is confidential. You must sign a medical release in order for the medical information to be used as evidence of sexual abuse. You have the right to refuse to sign the medical release.

Sexual abuse is a serious matter. The Department of Correction will investigate all reports of sexual abuse and sexual harassment. Allegations of sexual abuse that are deemed to be criminal in nature will be investigated by the Connecticut State Police. Perpetrators will be subject to a full range of criminal and administrative actions.

It is never appropriate for a staff member to make sexual advances, comments, or engage in sexual contact or intimate activity with an inmate. Even if the inmate wants to be involved with the staff person, the staff person is prohibited from such conduct.

It is not appropriate for an inmate to approach a staff person for the purposes of sexual activity.

*UD 6.12 Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention (Attachment E)*

Page: 3 of 4

The Department of Correction will seek termination and criminal prosecution of employees, contractors, vendors and volunteers who engage in sexual abuse or sexual harassment.

An inmate may report **SEXUAL ABUSE** in one of the following ways:

1) Verbally to any facility staff.
2) In writing to any facility staff.
3) In writing to the appropriate Unit Administrator.
4) In writing to the appropriate District Administrator.
5) In writing to the PREA Investigation Unit.
6) In writing to the Connecticut State Police.
7) Via telephone to the DOC Sexual Abuse Hotline.
8) Via telephone to the Connecticut Sexual Assault Crisis Services Hotline.

An inmate may report **SEXUAL HARASSMENT** in one of the following ways:

1) Verbally to any facility staff.
2) In writing to any facility staff.
3) In writing to the appropriate Unit Administrator.
4) In writing to the PREA Investigation Unit.

As part of the investigation of your report of sexual abuse or sexual harassment you may be requested to provide a written statement detailing the facts and circumstances of the incident to the assigned Investigator. Any personal property of yours that may contain evidence pertinent to the investigation may be seized by DOC officials or the Connecticut State Police. If your report of sexual abuse leads to administrative or criminal charges against another person, you may be required to testify as a witness in any related proceedings.

Sexual abuse and sexual harassment investigations are **CONFIDENTIAL** matters. Do not discuss your involvement in any such investigation with anyone not directly related to the resolution of the investigation.

Staff and inmates are prohibited from acts of retaliation against you for reporting allegations of sexual abuse or sexual harassment. Retaliation includes, but is not limited to, any intimidation, threat, coercion, disciplinary action discrimination or verbal abuse directly related to the reporting of sexual abuse or sexual harassment.

Inmates that knowingly make false allegations regarding sexual abuse or sexual harassment may be subject to administrative disciplinary sanctions or criminal prosecution in accordance with Administrative Directive 9.5 and all applicable Federal, State or Local laws.

The following page(s) contain contact information including telephone numbers and addresses for purposes of reporting sexual abuse.

Page : 4 of 4

## **Mailing Addresses:**

Connecticut State Police
1111 Country Club Road
Middletown, C.T. 06457

PREA Investigation Unit
954 Highland Avenue
Cheshire, C.T. 06410

DOC Security Division
24 Wolcott Hill Road
Wethersfield, C.T. 06109

District Administrator **(North)**
1153 East Street South
Suffield, C.T. 06078

District Administrator **(South)**
944 Highland Avenue
Cheshire, C.T. 06410

YWCA Sexual Abuse Crisis Center
175 Main Street
Hartford, C.T. 06106

Center for Women and Families Crisis Center
753 Fairfield Avenue
Bridgeport, C.T. 06604

Sexual Abuse Crisis Center
78 Howard Street 2nd Floor
New London, C.T. 06320

Safe Haven of Greater Waterbury
29 Central Avenue Box 1503
Waterbury, C.T. 06721

## **Telephone Numbers:**

DOC Sexual Abuse Hotline: (From any inmate telephone) Dial - *9222#
Connecticut State Police: (From any inmate telephone) Dial - *9333#

Connecticut Sexual Assault Crisis Services 24 Hour Hotline:

English- 1-888-999-5545
Spanish- 1-888-568-8332

*UD 6.12 Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention (Attachment E)*

Exhibit - C

1) A (2) page Letter From (Attn: Jenna Bessette)
   Dated: (6/15/2018)

2) A (2) page Letter From (Attn: Jessica N. Hansen)
   Dated: (1/15/2019)

3) A (1) page Letter From (Attn:@ Patrick T. Dunn)
   Dated (4/30/2020)

(Exhibit ⌐⊙⊙)  31 of 35  RUN BY:

# INMATES' LEGAL AID PROGRAM

## BANSLEY | ANTHONY | BURDO LLC

### Veterans. Lawyers.
www.**BansleyLaw**.com

265 ORANGE STREET, NEW HAVEN, CT 06510 | 1.866.311.4527 | 475.227.0710

**ATTORNEY-CLIENT PRIVILEGE**

June 15, 2018

Jossean Crispin, Inmate # 339978
Northern Correctional Institution
287 Bilton Road, POB 665
Somers, CT 06071

Dear Mr. Crispin,

Thank you for contacting the Inmates' Legal Aid Program (ILAP). I am writing in response to your correspondence dated May 16, 2018. In that letter, you discussed various issues. I will address each issue separately.

First, you asked for assurance that anything you share with our office will not be shared with the Department of Correction (DOC). ILAP is a free program that provides legal assistance to inmates in the State of Connecticut. We are a private organization operated by a private law firm, Bansley Anthony Burdo LLC, which is unaffiliated with the Connecticut Department of Corrections. Therefore, anything we discuss will not be disclosed, on our end, to any outside individuals/entities without your express permission.

Second, you asked for legal assistance related to a criminal case. Unfortunately, ILAP is unable to assist you with this matter. The scope of ILAP's services are limited by contract to rendering legal assistance with problems in the State of Connecticut, which includes (identifying, articulating and researching civil legal claims involving terms and conditions of confinement.)

As stated in Jenkins v. Haubert, 179 F. 3d 19, 28 (2d Cir. 1999) (internal citations omitted):

> "Conditions of confinement" is not a term of art; it has plain meaning. It quite simply encompasses all conditions under which a prisoner is confined for his term of imprisonment. These terms of disciplinary or administrative segregation such as keeplock or solitary confinement, as well as more general conditions affecting a prisoner's quality of life such as: the revocation of telephone or mail privileges or the right to purchase items otherwise available to prisoners; and the deprivation of exercise, medical care, adequate food and shelter, and other conditions that, if improperly imposed could violate the Constitution."





Comprehensive Authorization Form

When completing this form, please be sure to fill in your name, inmate number, date of birth, and social security number at the top. In addition, please sign your name and date the form, and have your signature witnessed by a notary public. This means that when you sign the form, you should do so in the presence of a notary public. A notary should be available at your facility.

Authorization to Obtain and/or Disclose Protected Health Information Form

When completing the Authorization to Obtain and/or Disclose Protected Health Information Form, please be sure to add your name, inmate number, and date of birth at the top of the form, sign and date the form, and have your signature witnessed by a staff member on the line Entitled "Witness Signature". This means that when you sign the form, you should do so in the presence of a staff member. The staff member must then sign their name on the line Entitled "Witness Signature".

Be sure not to complete the section entitled "Request to Withdraw Authorization," unless you would actually like to withdraw the authorization you are giving ILAP to receive records.

Authorization for the Release of Non-Health Information Form

When completing the Authorization for the Release of Non-Health Information Form, please be sure to add your name, inmate number, and date of birth at the top of the form, sign and date the form, and have your signature witnessed by a staff member on the line Entitled "Witness Signature." This means that when you sign the form, you should do so in the presence of a staff member. The staff member must then sign their name on the line Entitled "Witness Signature." Please also be sure to place your initials on the line above (initial).

If you have any questions, please do not hesitate to contact our office.

Sincerely,

Jenna Bessette, Esq.

Enclosures



(Exhibit-B)

33 of 35

**RUN BY:**

# INMATES' LEGAL AID PROGRAM

# BANSLEY | ANTHONY | BURDO LLC

## Veterans. Lawyers.
www.**BansleyLaw**.com

265 ORANGE STREET, NEW HAVEN, CT 06510 | 1.866.311.4527 | 475.227.0710

## <u>ATTORNEY CLIENT PRIVILEGE</u>

January 15, 2019

Jossean Crispin, Inmate # 339978
Northern Correctional Institution
287 Bilton Road, POB 665
Somers, CT 06071

Dear Mr. Crispin,

This letter is to follow up our legal call earlier today. I previously sent you information regarding disciplinary due process. You indicated that the information you were seeking was regarding administrative segregation. I apologize for the error. I have enclosed some case law that address administrative segregation:

- *Alston v. Cahill*, Case No. 3:07-CV-473;
- *Sandin v. Connor*, 515 U.S. 472 (1995); and
- *Sealy v. Giltner*, 197 F.3d 578 (1999).

You further stated that you sent out a letter yesterday requesting various items. You informed me what items you requested in the letter and I will address each of those requests below:

1. You requested a copy of the contract between the Department of Corrections (DOC) and the Inmates' Legal Aid Program (ILAP).

   Please note that ILAP is not a public agency of the State of Connecticut and ILAP staff members are not employees of the State of Connecticut. The FOIA only applies to agencies of the State of Connecticut. ILAP is simply a private law office with an independent contract with DOC to provide legal assistance to Connecticut inmates. Therefore, FOIA does not apply to ILAP.

   That includes me

   You can obtain a copy of the contract by addressing your request to:



Freedom of Information Administrator
Department of Corrections
24 Wolcott Hill Road
Wethersfield, CT 06109



2.  (You requested a sample 1983 dealing with mental health treatment filed by inmates.) To protect
    inmate privacy, we do not send complaints relating to other inmates. Instead, I am enclosing a
    copy of a complaint used in the radon class action at Garner C.I., which is a good, publicly
    available template for you to review. Said complaint does deal with medical issues.
    Additionally, I am enclosing a primer on 1983 medical complaints for your review.

3.  You requested case law concerning mental health complaints by prisoners. The following are
    enclosed:

    a.  *Wiseman v. Armstrong*, 269 Conn. 802 (2004);
    b.  *Sosa v. Warden*, State Prison, 2017 WL 6887135; and
    c.  *McKinney v. Warden*, 2013 WL 3970277.

4.  You requested a copy of the Prison Litigation Reform Act, a copy of which is enclosed.

5.  You requested a Table of Contents for DOC's Administrative Directives. You will find a copy
    enclosed. Please note that you should be able to view and obtain copies (a copy fee may apply)
    through your counselor. *again Refused to assist me and Referred me Else Where*

6.  You requested the Table of Contents for the Jailhouse Lawyer's Manual. A copy is enclosed,
    along with a form you can use to request three free chapters. → *Refuse to assist and Referred me Else Where*

7.  Lastly, you requested an Application for In Forma Pauperis Status for a 1983 claim, which you
    will find enclosed.

You asked that I make copies of legal paperwork for you. You should have access to a copier at your
facility which I encourage you to use. I apologize for the inconvenience. You stated that you have
documentation which indicates ILAP will make copies for you (Once I receive that from you, I will
review the copy policy with my supervisors.) → *the Contract shows the can Provide copy's but Refuse to give me*

Please do not hesitate to contact me with any additional questions or concerns. *The Contract to Show them as Well as (C.D-O.C)*

Sincerely,

*Jessica Hansen /ABA*

Jessica N. Hansen, Esq.

Enclosures

# INMATES'
## LEGAL AID PROGRAM

Run by: Bansley Law Offices, LLC
54 West Main Street
Mystic, CT 06355
877-294-7982 (toll free)
475-227-0710

### ATTORNEY CLIENT PRIVILEGED

April 30, 2020

Jossean Crispin, Inmate # 339978
Cheshire Correctional Institution
900 Highland Ave.
Cheshire, CT  06410

Dear Mr. Crispin:

Thank you for contacting the Inmates' Legal Aid Program (ILAP). We received your most recent correspondence on 4/16/20. We are able to comply with most of your requests but not all of them. I am enclosing essays and case law dealing with solitary confinement. I am also providing the requested administrative directive. You should be able to access the AD's from your counselor for future reference.

You requested assistance with witness preparation. We can provide information to help guide you but we cannot actively assist you. As you are aware we do not represent you and according to our contract our participation in court matters is limited to research and advisement.

We had a legal call scheduled for 11:30 on 4/28/20. It did not come in. If you still need our assistance please arrange another call.

Sincerely,

Patrick T. Dunn Esq.
PTD/gvg

Enclosures:

(Exhibit-D)